381 A.2d 453

**COMMONWEALTH of Pennsylvania ex rel. Mary McKINNEY**

v.

**Linda McKINNEY and Donald McKinney, Appellants.**

Supreme Court of Pennsylvania.

Argued Nov. 15, 1977.

Decided Dec. 24, 1977.

2

William C. Gierasch, Jr., York, for appellant.

Daniel W. Shoemaker, York, for appellee.

Before O'BRIEN, ROBERTS, POMEROY, NIX, MAN-DERINO and PACKEL, JJ.

## OPINION

PER CURIAM.

Mr. Justice O'Brien, Mr. Justice Roberts, Mr. Justice Pomeroy and Mr. Justice Packel affirm the contempt order against Donald McKinney. Mr. Justice Pomeroy, Mr. Justice Nix, Mr. Justice Manderino and Mr. Justice Packel reverse the contempt order against Linda McKinney.

EAGEN, C. J., did not participate in the consideration or decision of this case.

PACKEL, J., filed an opinion in support of per curiam order.

ROBERTS, J., filed a concurring and dissenting opinion in which O'BRIEN, J., joins.

NIX, J., filed a concurring and dissenting opinion.

MANDERINO, J., filed a concurring and dissenting opinion.

### OPINION IN SUPPORT OF PER CURIAM ORDER

PACKEL, Justice.

A divorce and custody award to a mother in New York, followed by her moving to Florida, culminated in this Pennsylvania proceeding by the Florida mother to obtain physical custody of her son. The service or attempted service of a writ of habeas corpus upon the father at his home in Pennsylvania was described by his wife, the stepmother of the child, as the handing of legal papers to her, which she refused to accept.

Another writ of habeas corpus commanding the stepmother to produce the child in court some twenty-five days later was served upon her as she was picking up the child at elementary school. At the first hearing the stepmother testified that she told her husband about the writs. She also stated that they lived in their Pennsylvania home until the father and child moved out within twenty-four hours after the service of the last writ and that she did not know where in New York her husband and the child were living.

A second hearing was held to show cause why the wife and the husband should not be held in contempt for failing to obey the writs. Notice of the hearing was given to the husband by mail to his New York lawyer. At this hearing the stepmother again testified that her husband had taken the child and that she had no custody or control over the child thereafter. The court entered a final order finding the father and stepmother in contempt of court and concluded:

"We assess a civil penalty designed to compel the delivery of the child in Court at the rate of $100 every 7 days from this date until the child is produced and hearing may be had."

The Superior Court affirmed the order per curiam.

After this Court granted a petition for allowance of appeal the father and stepmother filed a petition to modify, supplement and amend the record, alleging that subsequent to the appeal to the Superior Court the father had sought a change in the New York custody decree. It also alleged that the New York court, after a custody hearing in which the mother and her counsel had appeared, modified the original order so that the father was awarded custody of the child on April 11, 1977. The mother filed an answer to the petition to this Court which did not deny her participation in the New York hearing but denied the effectiveness of that proceeding in this Commonwealth.

The case presents three broad issues: first, the question of jurisdiction in the threefold aspect of the basis for asserting jurisdiction, the effectuation of service and the reasonableness of notice; second, the liability of a spouse for non-compliance with an order to produce a stepchild in the physical custody of her husband; and, third, the effect, if any, of a subsequent contested custody order of an extra-state court upon a pre-existing contempt order of a local court.

## I. Custody Jurisdiction Over an Absent Parent

The recognized bases for the judicial assertion of jurisdiction in child custody cases include the physical presence of the child in the state, the domicile of the parties to the controversy, and the domicile of the parent who has physical custody. Conflict of Laws, Restatement 2d, § 79, cited with approval in *Commonwealth ex rel. Logan v. Toomey*, 241 Pa.Super. 80, 359 A.2d 468 (1976). No problem exists in this case as to the basis for jurisdiction because, at the inception of the proceedings, the child was living in Pennsylvania and the father, who has physical custody, was domiciled in Pennsylvania. Domicile is a recognized basis for the asser-

tion of jurisdiction. *Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940).

■ The more serious question presents itself as to the subjection of the father to Pennsylvania jurisdiction in that there is no return of service by the sheriff. Custody proceedings can properly be commenced under our ancient proceeding for habeas corpus. The Act of February 18, 1785, 2 Sm.L. 275, § 1, 12 P.S. § 1873, provides for service as follows:

> "And whenever the said writ shall, by any person, be served upon the officer, sheriff, jailer, keeper or other person whatsoever, to whom the same shall be directed, by being brought to him, or by *being left with any of his under officers or deputies, at the jail, or place where the prisoner is detained* . . ." (emphasis added).

Its broad scope of applicability to any "keeper" is matched by its provision for service upon any deputy where the person is "detained." "Deputy" would include any agent who is holding custody for the parent. The Act of May 25, 1951, P.L. 415, § 4, 12 P.S. § 1904, also deals with service and notice of a writ of habeas corpus, stating:

> "Service of the writ or the rule to show cause, as the case may be, shall be made forthwith in such manner as the judge may direct, anywhere in the Commonwealth, upon the warden, superintendent or other person in charge of the penitentiary . . . or other place in which the relator is imprisoned or detained."

These broad provisions are to be compared with the ordinary civil rule for service at the domicile of a defendant by leaving a copy with an adult member of the household. Pa.R.C.P. 1009(b)(2)(i). It is unnecessary to decide which provision is applicable because they are each of the same import.

The contention that the writ or a copy was not left with the stepmother is adequately met by her testimony as to her refusal to accept the writ and by her knowledge of what it was about, which information was admittedly given to her husband. Service cannot be negated by refusing to accept

papers, and whether the refusal is by the defendant or a representative is immaterial. *Compare Pincus v. Mutual Assurance Co.*, 457 Pa. 94, 321 A.2d 906 (1974), where the return of service showed that the recipient whose name was required refused to state his name.

■ It is true that residents cannot attack a sheriff's return when it recites facts showing that service has been effected. *Hollinger v. Hollinger*, 416 Pa. 473, 206 A.2d 1 (1965). The absence of a return that service has been effected, however, is not conclusive of non-service upon a court which hears facts establishing the validity of the service. In *Goodman v. Ancient Order of United Workmen*, 211 Minn. 181, 183–84, 300 N.W. 624, 625 (1941), the court pointed out that the fact of service is the important thing in determining jurisdiction and added that "proof of service may be defective or even lacking, but if the fact of service is established jurisdiction cannot be questioned." In *Commonwealth ex rel. Zimbo v. Zoretskie*, 124 Pa.Super. 154, 188 A. 365 (1936), it is pointed out that procedural irregularities such as the non-filing of a return of service will not stand in the way of a habeas corpus proceeding for custody to be decided on the merits. There is no serious question as to the husband having been given notice of the two hearings. His wife testified as to giving him notice and in addition notice was mailed to the husband's attorney in New York. The reasonableness of the steps taken to give notice to the father is unquestionable.

## II. Liability for Uncontrollable Non-Compliance with Habeas Corpus

■ The propriety of the service of a writ upon a representative has been heretofore dealt with. It does not follow, however, that such an agent is to be held in contempt for non-compliance. The contempt in this case was specifically stated to be a civil contempt to effectuate production of the child before the court. It does not behoove the court in attempting to bring about compliance to impose penalties upon one who has no control over compliance. We are past

the day when a spouse is to be subjected to an economic loss because of action or inaction by his or her spouse.

This case is to be contrasted with *Commonwealth ex rel. Lowry v. Reed*, 59 Pa. 425 (1868). In that case a grandfather was properly held in civil contempt notwithstanding his contention that the child was in the custody of his wife, who was the grandmother of the child. The court refused to give effect to his assertion that the child was not in his custody or under his control. In the instant case there is no question under the evidence but that the child was in the physical custody and control of the husband. There is no justifiable basis for the conclusion that the stepmother was responsible for the nonproduction of the child at a hearing. Furthermore, civil contempt to be warranted must be so conditioned that the contemnor has the power to purge himself or herself of the contempt. *Barrett v. Barrett*, 470 Pa. 253, 368 A.2d 616 (1977).

### III.  *The Impact of an Extra-State Determination upon Civil Contempt*

The purpose of the contempt order was to induce the bringing of the child before the court so that an immediate change of physical custody could be made, if warranted. Prevention of that assertion of power by the court warranted its civil contempt order against the husband. A difficult question is the effect which could be given to a determination by the New York court while the contempt order was in effect in view of the fact that the mother had appeared in that proceeding in which it appears that custody was changed and was awarded to the father.

The courts below did not consider this issue because it arose after their determinations. We recognize that full faith and credit of custody decrees as a matter of good conflict of laws must be matched by current circumstances as to what is good for the child. "The welfare of the child is always the overriding consideration. For this reason, probably the majority of courts have not felt themselves bound by full faith and credit, even in the absence of changed condi-

tions, to enforce without question of provisions of a custody decree rendered in another State." Conflict of Laws, Restatement 2d, § 79 p. 239. Whether a contempt order should remain in effect after subsequently contested litigation causes a possibly inconsistent situation could be resolved after a factual determination by the hearing court. Among other things, its review can include determinations of the substantive question as to what is best for the child or whether a Pennsylvania court procedurally should make a determination on the merits as to a controversy between a Florida mother and a New York father.

MANDERINO, Justice, concurring and dissenting.

I join in the reversal of the contempt order against Linda McKinney. I must dissent, however, from the affirmance of the contempt order against Donald McKinney for the reason that the record does not establish that proper service was ever made on Donald McKinney. The court, therefore, lacked jurisdiction over the judgment and did not have authority to enter the contempt order.

ROBERTS, Justice, concurring and dissenting.

I agree with Mr. Justice Packel's conclusion that this Court has jurisdiction in this case and join in Part I of his opinion. I also agree that the trial court properly held Donald McKinney in contempt for flouting the authority of the court. I cannot agree, however, with the majority's reversal of the judgment of civil contempt against Linda McKinney. I also cannot join in Mr. Justice Packel's discussion in Part III of the impact of an extra-state determination upon civil contempt because there has been no showing by an interested party of the existence of the foreign decree and the matter has not otherwise been raised.

Mr. Justice Packel presumes that because Linda McKinney did not have physical possession of the child, she was powerless to comply with the order of the court directing her to produce the child. This conclusion is unwarranted. The trial court, after hearing Linda McKinney's evasive and

contradictory testimony denying any knowledge of the disappearance of the child or the location of her husband and child, found her testimony incredible and determined that "although the father is no doubt the dominant influence in this arrangement . . . Linda has cooperated and continues to cooperate in this situation. We simply cannot believe her testimony and suspect that she is testifying as her husband has directed her to do. . . ." Indeed, it is undisputed that the child was in Linda McKinney's physical possession when the writ of habeas corpus was served upon her, and that she immediately called her husband to inform him of the writ. Within a day, according to Linda McKinney's testimony, the father snatched the child and fled the jurisdiction. It is equally undisputed that Linda McKinney failed to make a good faith attempt to comply with the order.

The trial court could reasonably conclude that Linda McKinney was not, as Mr. Justice Packel believes, wholly detached from the series of events leading to the child's absence from Pennsylvania, but was in fact a willing and active participant in what the court called a "subterfuge to avoid a hearing on the merits . . . to resolve the best interests of the child." There is every reason to believe that Linda McKinney, as one of the two participants in this subterfuge, retains the ability to cause production of the child as ordered by the court. Of course, if she later demonstrates that she lacks such power, or that she has failed, despite good faith efforts, to comply with the order, she may request the court to afford her relief from the contempt citation. See *In Re Martorano*, 464 Pa. 66, 80, 346 A.2d 22, 29 (1975). Until Linda McKinney makes such a showing, I would uphold the order of the court.

O'BRIEN, J., joins in this concurring and dissenting opinion.

NIX, Justice, concurring and dissenting.

I agree with the majority opinion that the contempt order as to Linda McKinney should be reversed. She was unable

to comply with the writ of habeas corpus because she did not have custody or control over the child at the time he was directed to be taken to the custody hearing. The present inability to comply with the writ is an affirmative defense to civil contempt, thus there was no basis for finding Linda McKinney's actions contemptuous. *Barrett v. Barrett*, 470 Pa. 253, 368 A.2d 616 (1977).

With regard to Donald McKinney's contempt order, the majority looks beyond the face of the return of service as did the court below. They conclude that since Linda McKinney testified as to giving Mr. McKinney notice, that he should be deemed to have had knowledge of the writ of habeas corpus and, therefore, should be held in contempt of court for his non-compliance. The majority acknowledges the authority of *Hollinger v. Hollinger*, 416 Pa. 473, 206 A.2d 1 (1965) for the proposition that residents cannot attack a sheriff's return when it recites facts showing that service has been effected. However, the majority confines *Hollinger* to the situation where service was, in fact, effected.

The Court in *Hollinger* stated:

Our courts have long adhered to the rule that, in the absence of fraud, the return of service of a sheriff, which is full and complete on its face, is conclusive and immune from attack by extrinsic evidence. (cites omitted) *Id.* 416 Pa. at 476, 206 A.2d at 3.

It is true that *Hollinger* involved the situation where service, was in fact effected, but the language in *Hollinger* indicates that as long as there is a sheriff's return full and complete on its face, it is immaterial whether the return shows that service was in fact made or whether it shows that it could not be effected. In either case the return would be conclusive and immune from attack. This interpretation of *Hollinger* is supported by the reasoning underlying this rule as set forth in *Hollinger*. The Court stated:

The rule of conclusiveness of a return of service of process is based upon the presumption that a sheriff, acting in the course of his official duties, acts with propriety and, therefore, when the sheriff in the course of such

official duties makes a statement, by way of an official return, such statement is given conclusive effect. *Id.* at 477, 206 A.2d at 3.

It cannot be said that a sheriff is only presumed to act properly when he makes a return showing service was in fact made, and not when the return shows service could not be effected.

In the instant case there was a return by the sheriff stating, "Re: Donald McKinney, one of the within named defendants[.] Unable to serve Mr. McKinney after numerous tries." The return being full and complete on its face, should have been accorded the conclusiveness and immunity from attack mandated by *Hollinger.* The lower court, therefore, erred in allowing extrinsic evidence by Linda McKinney indicating that she informed Mr. McKinney of the writ.

Additionally, the majority indicates that Donald McKinney had notice of the writ of habeas corpus based on his New York attorney's receipt of notice by mail.

The applicable statute describing the method of serving writs of habeas corpus is 12 P.S. § 1904. The statute in pertinent part states:

> Service of the writ or the rule to show cause, as the case may be, shall be made forthwith in such manner as the judge shall direct, *anywhere in the Commonwealth*, upon the warden, superintendent or other person in charge of the penitentiary, prison, reformatory, house of detention, mental institution or other place in which the relator is imprisoned or detained. (emphasis added).

The statute expressly limits service upon the person having custody of relator to be effectuated within the territorial limits of this Commonwealth.* The Superior Court in *Coombs v. Coombs*, 225 Pa.Super. 304, 303 A.2d 498 (1973) reiterated the mandate that service be effected within the Commonwealth:

---

* The statute also provides for additional service upon *other interested parties* which service is not expressly limited to effectuation within the Commonwealth.

The order of the court required that service be made on the husband either personally or by certified mail. Implicit in the order was the fact that service to be effective was to be made in Pennsylvania. The record shows that he was served personally in Tampa, Florida. This was improper service. 12 P.S. § 1904. *Id.* at 309, 303 A.2d at 500.

Because this writ in the instant case was mailed to Mr. McKinney's attorney in New York, this out of state service fails to comply with the requirements of section 1904.

Furthermore, New York counsel was not counsel of record in the instant case and, therefore, his receipt of notice cannot be imputed to Mr. McKinney Pa.R.C.P. 233.