

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-19-1994

# Fleet Consumer Disc. Co. v. Graves

Precedential or Non-Precedential:

Docket 92-2047

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Fleet Consumer Disc. Co. v. Graves" (1994). *1994 Decisions.* Paper 118.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/118

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 93-1709

————————


IN RE:  SHIRLEY GRAVES, Debtor

FLEET CONSUMER DISCOUNT CO.

v.

SHIRLEY GRAVES

EDWARD SPARKMAN, ESQUIRE,
          Chapter 13 Trustee


          Fleet Consumer Discount Company,
                              Appellant


——————————————————————————————————————————

On Appeal from the United States District Court
   for the Eastern District of Pennsylvania
      (D.C. Civil Action No. 92-04488)
          ————————————————————


          Argued February 28, 1994

  Before:  STAPLETON and SCIRICA, <u>Circuit</u> <u>Judges</u>
      and SMITH, <u>District</u> <u>Judge</u>*

          (Filed: August 19, 1994


                ROBERT J. WILSON, ESQUIRE (Argued)
                Lipman, Freiberg, Comroe & Hing
                1700 Market Street, Suite 1400
                Philadelphia, Pennsylvania 19103

                Attorney for Appellant,
                Fleet Consumer Discount Company

*The Honorable D. Brooks Smith, United States District Judge for the Western District of Pennsylvania, sitting by designation.

F. LEE JONES, ESQUIRE (Argued)
Jones & Harrison
2003 Fitzwater Street
Philadelphia, Pennsylvania 19146

Attorney for Appellee,
Shirley Graves

_____

OPINION OF THE COURT
_____

SCIRICA, Circuit Judge.

This is an appeal from a judgment of the district court sitting as an appellate court in bankruptcy. At issue is whether, under Pennsylvania law, a non-record interest holder in real property is entitled to personal service before a foreclosure sale even though notice was mailed to the record owners and was posted on the property; and whether a junior secured creditor can be a bona fide purchaser for value without notice, if at the time of sale it knew, or should have known, of the unrecorded interest.

The bankruptcy court found that Pennsylvania law requires personal service to non-record interest holders and that the purchaser's knowledge of the non-record interest prevented it from being a bona fide purchaser. In re Graves, 142 B.R. 115 (Bankr. E.D. Pa. 1992). The district court affirmed, holding that Pennsylvania's Rules of Civil Procedure required the judgment creditor to give personal notice to all interest holders and that the purchaser's knowledge of the non-record interest

prevented it from being a bona fide purchaser. In re Graves, 156 B.R. 949 (E.D. Pa. 1993). We hold that, on these facts, Pennsylvania law does not require personal service, but that the purchaser was not a bona fide purchaser because of its actual knowledge of the unrecorded interest. We will affirm.

**I.**

FACTS and PROCEDURE

A. Background

On October 12, 1983 Thomas Bacon and his grandson, Duane Bacon,[1] purchased a house at 6133 Nassau Road, Philadelphia as tenants in common, each owning a one-half interest. They paid $39,000.00, after obtaining a $24,000.00 mortgage from Liberty Savings Bank. Thomas Bacon lived at 6133 Nassau Road with his wife, three of his children, and Duane until he died intestate on January 7, 1986. At the time, no one probated his estate or notified Liberty Savings Bank of his death.[2] Thomas Bacon's wife died in September, 1990. One son moved away before her death and Duane moved away shortly thereafter. In October, 1990, the house was occupied by two of Thomas Bacon's children, his daughter, Shirley Graves, and a son, Andrew Bacon.

---

[1]. Duane Bacon is the nephew of the appellee, Graves.

[2]. Thomas Bacon's estate was probated in October 1990. Probate had not been completed as of the time of oral argument before this court.

B.  State Proceedings

In November, 1990, Liberty Savings Bank began foreclosure proceedings against Thomas and Duane Bacon in Philadelphia Common Pleas Court.[3]  Liberty's attempts to serve notice on Thomas and Duane Bacon personally were unsuccessful, so on March 4, 1991, after a petition by Liberty, the court permitted service by regular mail and by posting notice on the property.  A return of service, signed by a deputy sheriff, recited that a copy of the complaint was posted on the house on March 16, 1991.[4]  On May 3, 1991, after Thomas and Duane Bacon failed to answer Liberty's complaint, the Common Pleas Court entered a default judgment, and ordered that notice of the judgment be sent to Duane and Thomas Bacon at the house.  Liberty then sent Thomas and Duane Bacon notice of a sheriff's sale by certified mail.  It also sent notice to all junior creditors, including Fleet Consumer Discount Company.[5]  On September 6, 1991 notice was posted at the house pursuant to the Common Pleas Court's order, as evidenced by a deputy sheriff's return of service.

---

[3].  The record does not reflect how long the mortgage had gone unpaid before Liberty began foreclosure proceedings.

[4].  Graves admits letters addressed to Thomas and Duane (or Mrs. Duane) Bacon were received at the house, but she denies notice was ever posted on the house.

[5].  Apparently unbeknownst to his family Duane Bacon took a $12,049.00 second mortgage against his interest in the house from Fleet Consumer Discount.  Duane was living in the house when he took out the second mortgage.

At the sheriff's sale on October 7, 1991, Fleet purchased the property for $42,000.00.  Fleet attempted to sell the house to Graves, but after negotiations failed, Fleet filed an eviction action on November 8, 1991.  Graves was served on November 16, 1991, but did not file an answer.[6]  The court entered default judgment on January 15, 1992.

On April 9, 1992, Graves filed a "Motion to Set Aside Sheriff's Sale and/or Set Aside Default," and an "Emergency Petition to Stay Eviction" in Common Pleas Court.  The court denied the petition to stay the eviction without opinion on April 14, 1992.  It then denied her motion to set aside the sheriff's sale on May 14, 1992, and filed an opinion on August 17, 1992 holding that the motion was not promptly filed and that Graves did not have a meritorious defense to the claim.[7]

C.  Bankruptcy Proceedings

On April 22, 1992 Graves filed for bankruptcy.  Fleet filed a motion seeking relief from the automatic stay.  At a bankruptcy court hearing on June 9, 1992, testimony was given by

---

[6].  Although the Affidavit of Service contained a special instruction that the server "MUST GET NAME OF INDIVIDUAL SERVED!!," the affidavit states only that process was personally served on "Adult in charge of Defendant's residence who refused to give name or relationship."  Under Pennsylvania Rule of Civil Procedure 402(a)(2)(ii) personal service on an adult in charge of defendant's home constitutes valid service on the defendant. Flaherty v. Atkins, 152 A.2d 280, 281 (Pa. Super. Ct. 1959).

[7].  The Common Pleas Court's judgment was affirmed on appeal by the Pennsylvania Superior court. Liberty Savings Bank v. Estate of Bacon, No. 02344 (Pa. Super. Ct. Apr. 26, 1993).  A Petition for Allowance of Appeal is now pending with the Pennsylvania Supreme Court.

Graves and Heather Thompson, the Assistant President of Fleet's Upper Darby branch. There was a subsequent hearing on June 18, 1992, when the court permitted Fleet to admit certified copies of the affidavits of service.[8]

On June 25, 1992, the bankruptcy court denied Fleet's motion for relief from the automatic stay. The court found the sheriff's sale invalid on three independent grounds: (1) as the holder of an interest in the property Graves was entitled, under Pennsylvania law, to personal service, (2) Graves' continuous possession of the property put Liberty on constructive notice that Graves had an interest in the house which Liberty should have investigated before the sale, and (3) Fleet's knowledge of Graves' interest in the house prior to the sheriff's sale precluded Fleet from being a bona fide purchaser for value without notice. Graves, 142 B.R. at 117.

Fleet appealed to the district court, which affirmed, holding that Graves was entitled to personal notice under Pennsylvania law. The district court then upheld the bankruptcy court's factual findings that Graves had no prior notice of the sheriff's sale, Liberty had knowledge of Graves' interest, and Fleet was not a bona fide purchaser. This timely appeal followed.[9]

---

[8]. During the first hearing Fleet had unsuccessfully attempted to enter uncertified copies of the affidavits of service.

[9]. Bankruptcy court jurisdiction was based on 28 U.S.C. § 157(b)(1)(1988). The district court had jurisdiction under 28 U.S.C. § 158(a), which gives the district courts jurisdiction over appeals from final orders of the bankruptcy courts. The district court denied Fleet relief from the automatic stay, a

In an appeal from a judgment of a bankruptcy court, we review factual findings for clear error and apply plenary review to questions of law. "In that sense, our review duplicates that of the district court and we view the bankruptcy court decision unfettered by the district court's determination." In re Brown, 951 F.2d 564, 567 (3d Cir. 1991).

## II.

DISCUSSION

A. Issue Preclusion

Under Pennsylvania law, real property cannot be sold at sheriff's sale until the interest holders have received notice of the sale. See Pa. R. Civ. P. 3129.1 (a) (Supp. 1994). The Bankruptcy court invalidated the sheriff's sale, in part, because it believed Liberty failed to give Graves the required notice. Before this case reached the bankruptcy court, however, the Philadelphia Common Pleas Court had already entered default judgments in the ejectment and foreclosure actions, and had denied Graves' motion to open the default judgments. Fleet contends that in issuing these rulings the state court found that Graves received valid notice. Thus, throughout the federal litigation, Fleet has maintained the state court rulings preclude Graves from raising the notice issue under the doctrine of issue preclusion.

(..continued)
final, appealable order in bankruptcy. Accordingly, this court has jurisdiction under 28 U.S.C. § 158(d).

The bankruptcy court rejected Fleet's argument because it believed applying issue preclusion under these circumstances would violate Graves' right to due process. 142 B.R. at 122. The district court held default judgments do not have preclusive effect in subsequent litigation. We agree issue preclusion does not apply here, but we do not reach the due process issue.[10]

Issue preclusion prevents the relitigation of facts adjudicated in a prior action. See Edmundson v. Borough of Kennett Square, 4 F.3d 186, 189 (3d Cir. 1993); Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1073-74 (3d Cir. 1990). Federal courts must give the same preclusive effect to state court factual findings as would the courts of that state. See 28 U.S.C. § 1738 (1988); Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985); Grimes v. Vitalink Communications Corp., 17 F.3d 1553, 1562 (3d Cir. 1994), petition for cert. filed, 63 U.S.L.W. 3010 (U.S. June 29, 1994)(No. 93-2098). Thus, to decide whether issue preclusion applies here we must first determine whether Pennsylvania courts would permit

_____

10. The measure of due process is whether "the means employed [are] such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315 (1950); see also Anderson v. White, 888 F.2d 985, 991 (3d Cir. 1989)(same). "When the state within which the owner has located such property seizes it for some reason, publication or posting affords an additional measure of notification." Mullane, 339 U.S. at 316. A procedural protection to be adequate, must represent a fair accommodation of the respective interests of creditor and debtor. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1271 (3d Cir. 1994)(quoting Finberg v. Sullivan, 634 F.2d 50, 58 (3d Cir. 1980)(in banc)).

litigation of the notice issue even though default judgments had been entered.  We believe they would.

In Muhammad v. Strassburger, McKenna, Messer, Shilobod, & Gutnick, 587 A.2d 1346 (Pa.), cert. denied, 112 S.Ct. 196 (1991), the Pennsylvania Supreme Court stated:

> In order to grant a demurrer pursuant to [issue preclusion], the objecting party must show that "the fact or facts at issue in both instances were identical; [and] that these facts were essential to the first judgment and were actually litigated in the first cause."  We have also required that the party against whom a plea of [issue preclusion] is asserted must have had a full and fair opportunity to litigate the issue in question in a prior action.

587 A.2d at 1348 (citations omitted); see also GPU Indus. Intervenors v. Pennsylvania Pub. Util. Comm'n, 628 A.2d 1187, 1192-93 (Pa. Commw. Ct. 1993) (same).  Fleet claims those requirements are met here; we cannot agree.

1.

Fleet contests the bankruptcy court's ability to adjudicate the validity of the notice Graves received, in part, because Graves raised the notice issue before the Common Pleas Court in connection with her motion to open the default judgments.  According to Fleet, that court's refusal to open the default judgments constituted a judgment on the merits which precluded relitigation of the issue before the bankruptcy court. We disagree.

Even though Graves raised the notice issue in connection with her motion to open the default judgments, it was

not "essential" to the judgment. See Muhammad, 587 A.2d at 1348. The Common Pleas Court stated, "[a] petition to open a default judgment . . . will be granted where the court finds that each of three factors are satisfied:

(1) the petition has been promptly filed;
(2) the default can be reasonably explained or excused; and

(3) a meritorious defense exists to the underlying claim."

Liberty Sav. Bank v. Estate of Bacon, No. 1387, slip op. at 2 (C.P. Phila. County Aug. 17, 1992) (citing Fink v. General Accident Ins. Co., 594 A.2d 345, 346 (Pa. Super. Ct. 1991)). The court then denied Graves' petition because it was not promptly filed and because "payment on the mortgage to a third party [does not] create a meritorious defense to the claim itself." Id. Because the only issue before it was whether to enforce the default judgment, the court did not make a finding on the notice issue. Thus, although the notice issue was raised, the court did not need to address it, and in fact chose not to. Consequently, we do not believe Pennsylvania's courts would give the judgment preclusive effect on the notice issue.

Moreover, the bankruptcy court was correct in not giving preclusive effect to the orders denying Graves' Motion to Open the Default judgments because the order violated the automatic stay in bankruptcy. When a debtor files for bankruptcy the Code automatically stays all judicial and administrative actions against the debtor. See 11 U.S.C. § 362(a)(1). Graves filed for bankruptcy on April 22, 1992. The Common Pleas Court

issued its orders denying relief from the foreclosure and refusing to stay the ejectment on May 14, 1992. Consequently, the orders were void when issued. See Borman v. Raymark Indus., Inc., 946 F.2d 1031, 1032-33 (3d Cir. 1991); Association of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446, 448 (3d Cir. 1982).

Fleet maintains the state court orders did not violate the stay because the underlying actions were brought by Graves instead of against her. But, in Association of St. Croix Condominium Owners v. St. Croix Hotel Corp., we expressly rejected Fleet's reasoning, stating:

> Section 362 by its terms only stays proceedings against the debtor. The statute does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate . . . . It might be argued that whether an appeal is stayed by section 362 should be determined by whether the appeal is taken "by" or "against" the debtor, i.e., whether the debtor is the appellant or appellee. We reject this approach.
>
> In our view, section 362 should be read to stay all appeals in proceedings that were originally brought against the debtor . . . . Thus, whether a case is subject to the automatic stay must be determined at its inception.

682 F.2d at 448-49.

Fleet attempts to distinguish this case from St. Croix Hotel Corp. on the grounds that St. Croix Hotel Corp. involved an appeal from an action originally brought against the debtor but contends this action was originally brought by the debtor. We disagree.

Graves never filed a complaint in Common Pleas Court and her "action" was never assigned a docket number of its own.

Rather, the dockets indicate Graves filed a motion in Fleet's foreclosure and ejectment suits. In each action the Common Pleas Court treated Graves as the defendant, rather than as a new plaintiff. Because the proceedings were originally brought against the debtor, the orders denying Graves' motions were entered in Liberty's actions against the debtor, and therefore in violation of the stay.

2.

Fleet's issue preclusion argument also fails because default judgments are not given preclusive effect in Pennsylvania's courts. The Pennsylvania Supreme Court has adopted the preclusion principles of the Second Restatement of Judgments. See Schubach v. Silver, 336 A.2d 328, 333 (Pa. 1975); GPU Indus., 628 A.2d at 1193. The Restatement provides "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive on a subsequent action between the same parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1980).

Comment e to that section states "[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section does not apply with respect to any issue in a subsequent action." Id. cmt. e. Applying that rule here indicates Pennsylvania courts would not give preclusive effect to the Common Pleas Court's orders in the foreclosure and ejectment actions because Graves did not actually litigate those cases. See

GPU Indus, 628 A.2d at 1193. See generally, 1B James W. Moore, Moore's Federal Practice ¶ 0.444[2] (2d ed. 1985).[11]

### B. Notice.

We turn next to the bankruptcy court's finding that Pennsylvania law required Liberty to notify Graves personally of the sheriff's sale. Finding that Pennsylvania Rule of Civil Procedure 3129 requires an executing creditor to give notice to all property owners, the bankruptcy court held the sheriff's sale invalid because Graves did not receive prior notice. See 142 B.R. at 120. We disagree. We do not believe Rule 3129 requires personal notice to someone in Graves' position; we also do not believe Graves was unaware of the sheriff's sale.

### 1. Rule 3129

In Pennsylvania, notification of a sheriff's sale is governed by Pennsylvania Rule of Civil Procedure 3129. Rule 3129 has two main parts which together prescribe how notice must be effected.[12] Part 1 requires an executing plaintiff to submit an

---

[11]. Fleet cites Zimmer v. Zimmer, 326 A.2d 318, 320 (Pa. 1974) and Bailey v. Harleysville Mut. Ins. Co., 491 A.2d 888, 890 (Pa. Super. Ct. 1985) for the proposition that Pennsylvania courts consider default judgments to be judgments on the merits for purposes of issue preclusion. However, these case are not convincing. Zimmer was decided in 1974 a year before the Pennsylvania Supreme Court adopted the Restatement's principles in Schubach. Bailey did not involve a default judgment, and therefore its discussion about the preclusive effect of default judgments is dicta. Moreover, Bailey makes no reference to the Restatement or Schubach and as the opinion of an intermediate appellate court, is not controlling.

[12]. A third part only applies when a sheriff's sale is stayed or postponed. See Pa. R. Civ. P. 3129.3.

affidavit with the names of parties whose interest could be affected by the sale. Pa. R. Civ. P. 3129.1 (b).[13] Part 2 requires the plaintiff to send written notice to all persons listed in the affidavit, and requires the posting of handbills at the Sheriff's office at least 30 days before the sale and the publication of notice in local newspapers once a week for at least three weeks before the sale. Id. § 3129.2(a).

Subsection § 3129.2(c)(1)(i) provides that "[s]ervice of notice shall be made upon a defendant in the judgment who has not entered an appearance and upon the owner of the property . . . ." Id. (numbering omitted) (emphasis supplied). The bankruptcy court interpreted the term "owner of the property" to include "every owner of any interest," 142 B.R. at 120, regardless whether that interest was recorded or known to the executing creditor. Id. Thus, it concluded the Sheriff's sale was invalid because Graves did not receive notice. See 142 B.R. at 120.

---

13. Rule 3129.1 provides in part:

(b) The affidavit shall set forth to the best of the affiant's knowledge or information and belief as of the date the praecipe for the writ of execution was filed the name and address or whereabouts of

(1) the owners or reputed owners of the property;
(2) every person who has any record lien on that property;
(3) every other person who has any record interest in that property which may be affected by the sale; and
(4) every other person who has any interest in that property not of record which may be affected by the sale and of which plaintiff has knowledge.

Pa. R. Civ. P. 3129.1(b) (Purdon Supp. 1993).

We disagree. Rule 3129.1's plain language distinguishes between owners, § (b)(1), other persons having a record interest, § (b)(2), and persons having an interest not of record, § (b)(4). If the definition of owner in subsection (b)(1) included every owner of any interest, the subsequent sections would be surplusage. We believe, therefore, that an owner in this context is any person whose ownership appears of record. Cf. Baxter Dunaway, 4 Law of Distressed Real Estate, § PA1.05., at PA-10 (Pennsylvania Jurisdictional Summary) (A current title search will identify the owner of the property for notice purposes under Rule 3129); 72 Pa. Cons. Stat. Ann. § 5860.102 (1990) (defining "Owner" as "the person in whose name the property is last registered, if registered according to law" for Real Estate Tax Sale Law); Pittsburgh v. Pivirotto, 502 A.2d 747, 751 (Pa. Commw. Ct. 1985) (even though redemption period had not expired, record of purchaser's interest in treasury deed book triggered notice requirement), aff'd 528 A.2d 125 (Pa. 1987). Thus, Graves is not an owner of the property; at most she is an interest-holder.

Under Pennsylvania's Rules of Civil Procedure an executing creditor must notify only those persons that fall within the categories designated in Rule 3129.1(b) because Rule 3129.2(c) restricts the persons who must receive written notice to those listed on the 3129.1 affidavit.[14] Graves was not

---

[14]. Rule 3129.2(c) provides that "[t]he written notice . . . shall be served . . . on all persons whose names and addresses are set forth in the affidavit required by Rule 3129.1." Pa. R. Civ. P. 3129.2 (Purdon Supp. 1993). Subsection 3129.2(c)(1)

entitled to notice before the sale unless she was either the owner or reputed owner of the property, see § 3129.1(b)(1), or a non-record interest holder whose interest could be affected by the sale and is known by the creditor, see § 3129.1(b)(4).[15] Graves maintains she has a right to personal notice because "of her interest in the home being detrimentally affected by the Sheriff's Sale." Appellee Brief at 11. Thus, we understand Graves to argue that she had an interest in the property requiring notice under § 3129.2(b)(4), not that she was the owner or reputed owner of the property requiring notice under (b)(1).

Operating in conjunction with § 3129.2, subsection 3129.1(b)(4) requires notification of "every other person who has any interest in that property not of record which may be affected by the sale and of which the plaintiff has knowledge." 3129.1(b)(4). The bankruptcy court found that Liberty had

(..continued)
declares how certain people are to receive written notice, not who is to be notified. See Rule 3129.2 Explanatory Comment -- 1989 ("subdivision (c)(1)(i) and (c)(1)(ii) dictate different methods of service . . . ."). Interpreting Rule 3129.2(c)(1) as compelling written notice to every owner, regardless whether that owner falls within the definitions in Rule 3129.1(b), makes the section internally inconsistent because the subsection would require notice to all owners, while the main section would require notice only to those persons covered by the Rule 3129.1 affidavit. When interpreting a statute "a construction which would create confusion should be avoided." 2A Norman J. Singer, Sutherland Statutory Construction § 45.12, at 61 (5th ed. 1992); cf. id. § 46.06 (effect must be given to every clause and sentence).

[15]. Because Graves did not have a record interest, notice was not required by (b)(2), which requires notice to all record lienholders, or (b)(3), which requires notice to any record interest holders whose interest could be affected by the sale.

constructive notice of Graves' interest because of her clear and open possession of the property. 142 B.R. at 121.  The district court held this finding was not clearly erroneous. 156 B.R. at 955.  We cannot agree.

In Pennsylvania, clear and open possession of real property constitutes constructive notice to subsequent purchasers of the rights of the party in possession. See McCannon v. Marston, 679 F.2d 13, 17 (3d Cir. 1982); Overly v. Hixson, 82 A.2d 573, 575 (Pa. Super. Ct. 1951).  Graves lived at the house, without interruption, since before Thomas Bacon's death. Consequently, the bankruptcy court held Graves was entitled to personal service because Liberty had constructive knowledge of Graves' interest. 142 B.R. at 120-21.

The bankruptcy court correctly stated Pennsylvania's general rule for constructive notice; however, an exception to the rule provides that where a possessor lives with a record owner in a manner consistent with the record ownership, no constructive knowledge is imputed. Overly, 82 A.2d at 575.  The Pennsylvania Superior Court explained the rule, stating:

> There can be no doubt whatever of the proposition that where the land is occupied by two persons . . .  and there is a recorded title in one of them, such joint occupation is not notice of an unrecorded title in the other. *** The rule is universal that, if the possession be consistent with the recorded title, it is no notice of an unrecorded title.
>
> Indeed, this conclusion is but an application of the general principle that, in the absence of proof to the contrary, actual possession is presumed to be in him who has the record

> title.  It would be intolerable to require an
> intending purchaser or incumbrancer to ask
> every person living in a property, be they
> many or few, whether or not he has a better
> title than the record owner, who is also in
> possession.

Overly, 82 A.2d at 575 (citations omitted).

According to Graves' undisputed testimony, Duane Bacon lived on the property until September, 1990.  Liberty commenced the foreclosure action in November, 1990 approximately two months after Duane Bacon left.  Although Graves was in clear and open possession when the foreclosure action began, it was inconsistent with the record ownership for less than two months.  Furthermore, Graves has not pointed to any evidence which would have put Liberty on notice of her interest.  Neither side cites any authority for the length of time possession has to be inconsistent with the record before an execution creditor is put on constructive notice; however, absent any other evidence indicating Liberty should have known of the record owner's departure or Graves' open possession, we believe Liberty was not on notice that a new ownership interest had been created.  Accordingly, there was no evidence to trigger Rule 3129.1(b)(4)'s notification requirement.

2.  Notice sent to Graves

At the June 9 bankruptcy hearing Graves testified she was unaware of the sheriff's sale until October 8, the day after the sale took place.  At the same hearing Fleet's Assistant Branch President, Thompson, testified that Fleet had sent several letters to Thomas and Duane Bacon at the house notifying them of

the sale, and that a Fleet employee had attempted to contact Graves by telephone prior to the sheriff's sale. The bankruptcy court found Graves was not notified of the sale, stating, "[h]aving observed the Debtor, we find her credibility outweighs the hearsay statements contained in Fleet's records to the contrary." 142 B.R. at 121.

Were this the full extent of the evidence presented to the bankruptcy court we might agree with its finding because our review of factual findings is limited to clear error, In re Brown, 951 F.2d 564, 567 (3d Cir. 1991), and we give deference to the trial court's determination of credibility. But the record also contained a return of service signed by a Philadelphia deputy sheriff which stated that notice of the sheriff's sale was posted at 6133 Nassau St. on September 6, 1991, one month before the sale took place.[16] In the face of objective evidence that notice was conspicuously posted at the house we believe the bankruptcy court erred in finding Graves never received notice. Our conviction is buttressed by Graves claim that she was also

[16]. In Pennsylvania a sheriff's return of service is conclusive with respect to facts of which the sheriff has personal knowledge. See Hollinger v. Hollinger, 206 A.2d 1, 2 (Pa. 1965); Pennsylvania ex rel. McKinney v. McKinney, 381 A.2d 453 (Pa. 1977); Collins v. Park, 621 A.2d 996 (Pa. Super. Ct. 1993); Miller v. Carr, 292 A.2d 423, 424 (Pa. Super. Ct. 1972). "The rule . . . is based upon the presumption that a sheriff, acting in the course of his official duties, acts with propriety and, therefore, when the sheriff in the course of his official duties makes a statement, by way of an official return, such statement is given conclusive effect." Hollinger, 206 A.2d at 2. Although federal courts need not apply the same rule, we recognize the policy behind the rule and accordingly give weight to an objective indication that process has been served.

unaware of the foreclosure action, despite a deputy sheriff's return of service stating that a copy of the complaint was posted at the house on March 16, 1991.  No evidence was presented that either return of service was in any way irregular.  We are faced, therefore, with two returns of service to the residence of the same defendant that have the appearance of regularity.  Under these circumstances, the record as a whole leaves us with the firm conviction that the court erred in finding Graves did not receive notice.[17]

### C. Bona Fide Purchaser

Fleet contends its purchase of the property is valid, even if the sale was conducted without regard to Graves' interest, because it was a bona fide purchaser for value without notice.  The bankruptcy court held that Fleet was not a bona fide purchaser because Fleet was aware of Graves' interest when it purchased the house at the sheriff's sale. 142 B.R. at 121.  In Pennsylvania, a bona fide purchaser for value without notice takes clear of any interest that was violated by the sale.  See Phillips v. Stroup, 17 A. 220 (Pa. 1889); Schuchman v. Borough of Homestead, 2 A. 407 (Pa. 1886).  Based largely on Thompson's testimony, the bankruptcy court found Fleet had knowledge of

---

[17]. Fleet contends any lack of notice on Graves' part was her own fault because she failed to read notices Liberty sent to Thomas and Duane Bacon at the house.  Thus, Fleet asks us to hold that Graves is estopped from claiming lack of notice as a defense.  Because we find Graves received notice of the foreclosure action and the sheriff's sale we do not reach this issue.

Graves' interest in the property,[18] and Fleet's knowledge prevented it from being a bona fide purchaser. 142 B.R. at 121.

The district court affirmed on somewhat different grounds finding that Fleet was put on constructive notice of Graves' interest when a Fleet employee contacted Graves by telephone on June 25, 1991. 156 B.R. at 957. Thus, the district court concluded Fleet was required "to investigate whether the possessor claimed to have any legal or equitable interest in the property." Id. On appeal, Fleet argues the district court should have either accepted its contention that there was a conversation between Fleet and Graves (and conclude Graves had notice of the sale), or accept Graves' argument that no such conversation took place (and conclude Fleet did not have knowledge of Graves' possession and interest). We disagree.

We have already held that Graves had notice of the sale, but Graves notice does not affect Fleet's status as a bona fide purchaser. Under Pennsylvania law actual or constructive knowledge of an unrecorded deed defeats a subsequent claimant's interest. See Long John Silver's, Inc. v. Fiore, 386 A.2d 569, 573 (Pa. Super. Ct. 1978) ("to qualify as a bona fide purchaser, the subsequent buyer must be without notice of the prior equitable estate)(citation omitted); Overly v. Hixson, 82 A.2d 573, 574 (Pa. Super. Ct. 1951); see also United States v.

---

18. During her testimony Thompson "described records of contacts of Fleet with the Debtor and Duane in June, 1991 which made Fleet aware that Thomas was deceased and that Debtor claimed to be one of his heirs." 142 B.R. at 118.

Purcell, 798 F. Supp. 1102, 1116 (E.D. Pa. 1991), aff'd 972 F.2d 1334 (3d Cir. 1992).

Fleet was aware that someone other than Duane Bacon had an interest in the property as early as 1988 when he applied individually for a mortgage on his half interest in the house. Thompson testified before the bankruptcy court that "[Fleet] knew at the time of the loan that [Thomas Bacon] was deceased." Therefore, the bankruptcy court's finding that Fleet had knowledge of Graves' interest was not clearly erroneous. Further, because Fleet knew Thomas was deceased and that the property was jointly held, we believe that when Fleet purchased the property it had knowledge that someone owned the other interest.[19]

Yet Fleet claims it is a bona fide purchaser, despite its knowledge of Graves' interest, because knowledge of a contrary interest only requires a prospective purchaser to investigate the purported ownership interest, which they did. We disagree. When a purchaser buys real property with knowledge of

---

[19]. Thompson testified she did not know the extent to which any investigation was done to determine who inherited Thomas Bacon's interest. In response to the bankruptcy court's inquiry about what steps were taken to find the holder of Thomas' interest, Thompson replied:

> Well, honestly, your Honor, I really don't know. I'm assuming that they go their standard questions [sic] that we ask about other names that appear on the title search. If they're deceased, we say are there any relatives, and if the party says no, then we proceed. And if the party says, yes, then we ask them to co-sign. We'll find out to the extent [i]f that's true or not.

an unrecorded interest, the purchaser's interest is subject to that of the unrecorded interest holder. See, e.g., Long John Silver's, 386 A.2d at 572-73; Purcell, 798 F. Supp. at 1116-17. For example, in Long John Silver's, when two purchasers had actual notice of an unrecorded equity interest in a piece of property, the court held the equity interest was superior to that of the subsequent purchasers. 386 A.2d at 572-73. The Superior Court explained, "[i]f the subsequent purchaser has notice of the first agreement of sale or deed, he has no protection as a bona fide purchaser and his title is subject to the interest vested in the first purchaser." Id. at 573.

The Pennsylvania Supreme Court has stated "a fundamental rule in construing recording laws generally [is] that actual notice of an unrecorded instrument, if received by a subsequent lienor before his interest attaches, is equivalent to the constructive notice which recording provides." Purcell, 798 F. Supp. at 1117 (quoting In re 250 Bell Road, 388 A.2d 297, 299-300 n.1 (Pa. 1978)). Because a purchaser's knowledge of the unrecorded interest subordinates the purchaser's interest to that of the unrecorded interest holder, Fleet's knowledge of an outstanding unrecorded ownership interest prevents it from being a bona fide purchaser. Consequently, we believe the sale was voidable.[20]

_____

[20]. Fleet argued the bankruptcy court erred by sua sponte raising the issue whether Fleet was a bona fide purchaser. Fleet claims a bankruptcy court can only raise certain issues sua sponte. We find no merit in this position. Determining whether or not to allow a claim against the property of the estate is a

## III.

For the foregoing reasons, we will affirm the order of the bankruptcy court denying relief from the automatic stay.

(..continued)
core proceeding expressly assigned to the bankruptcy court. <u>See</u> 11 U.S.C. § 157(b)(2)(B).