**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2888
_____

IN RE STONE RESOURCES, INC.,

Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 11-02526)
District Judge:  Honorable Petrese B. Tucker
_____

Submitted Under Third Circuit LAR 34.1(a)
April 26, 2012
_____

Before:  GREENAWAY, JR., ROTH, and TASHIMA*, *Circuit Judges*.

(Opinion Filed: May 29, 2012)
_____

OPINION
_____

TASHIMA, *Circuit Judge.*

---

*     Honorable A. Wallace Tashima, Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

1

This case arises from a franchisor's attempt to enforce various termination provisions of its franchise agreement against its bankrupt former franchisee. After the agreement expired by its own terms, the franchisee, Stone Resources, Inc. ("Stone"), initiated arbitration proceedings against the franchisor, MarbleLife, Inc. ("MarbleLife"), seeking to void the agreement. MarbleLife obtained a preliminary injunction to enjoin compliance with the termination provisions pending an arbitration decision, and Stone promptly filed for Chapter 11 bankruptcy. MarbleLife then moved to dismiss the bankruptcy petition or, in the alternative, for relief from the automatic stay to permit it to enforce the preliminary injunction. The Bankruptcy Court denied both requests. The District Court reversed the Bankruptcy Court's denial of relief from the automatic stay; it assumed that relief followed automatically from the fact that the preliminary injunction was not a "claim" dischargeable in bankruptcy. Stone now appeals. For the reasons that follow, we will vacate and remand the District Court's order. We will also vacate the District Court's order modifying the terms of the injunction in another case.

## I.     Background

As its name suggests, MarbleLife is in the business of maintaining and restoring marble, granite, and other surfaces. In April 2000, Stone contracted with MarbleLife to operate a franchise of the business in Pennsylvania. The agreement had a ten-year term, and it expired by its terms in April 2010.

Among the terms of the franchise agreement was a requirement that Stone not compete with MarbleLife or MarbleLife franchises "for a period of two (2) years after the expiration or termination" of the agreement. The agreement also contained a section entitled "Consequences of Termination," which, upon expiration of the agreement, required Stone, among other things, to: transfer "the business, its customers, facilities, services, employees, and telephone numbers, including all business listings in the Yellow Pages and all similar business directories, to MarbleLife or its designee"; "cease to use the Mark and the System in any way" or to "refer[] to or identify[] itself as a MarbleLife franchisee"; and give MarbleLife all printed materials identifying the business as a MarbleLife franchise and "all sales or marketing data or market research information relating to MarbleLife or any of its affiliates." Finally, the agreement provided that any disputes between the parties would be resolved by arbitration in Texas, where MarbleLife was headquartered, "[e]xcept for any temporary, interim or provisional equitable remedies."

Upon the expiration of the franchise agreement, Stone initiated an arbitration against MarbleLife in Texas seeking to void the agreement and asserting claims for, among other things, negligent misrepresentations and fraud. MarbleLife filed a complaint

in the Eastern District of Pennsylvania seeking injunctive relief to enforce the non-compete clause and turnover provisions of the agreement during the pendency of the arbitration. *MarbleLife, Inc. v. Stone Res., Inc.*, Civ. No. 10-2480 (E.D. Pa.), ECF No. 1. After discovery and a hearing, the District Court granted MarbleLife's request and issued a preliminary injunction. The Court concluded that MarbleLife had demonstrated a likelihood of success on the merits of its breach-of-contract and trademark claims; irreparable injury in the event its injunction request was denied; greater hardship in the absence of an injunction than Stone would suffer with one; and a public interest in precluding Stone from confusing customers and requiring it to live up to the terms of its agreement.

Stone moved for reconsideration, and on February 11, 2011, the District Court denied the motion, calling it "simply an expression of disagreement with the Court's previous ruling." The Court noted that its decision was not a "final enforceable ruling with regards to the parties['] rights or obligations under the contract" – the pending arbitration proceeding would accomplish that – but that it had jurisdiction to grant a preliminary injunction "to maintain the status quo pending the outcome of arbitration."

Five days after the District Court's denial of Stone's motion for reconsideration, Stone filed a petition in bankruptcy under Chapter 11. *Stone Res., Inc.*, Bankr. No. 11-11124 (Bankr. E.D. Pa.). The filing of the petition invoked the automatic stay of judicial proceedings, the enforcement of judgments, and attempts to obtain possession of property or recover claims against Stone. *See* 11 U.S.C. § 362(a). MarbleLife moved to dismiss the bankruptcy petition or, in the alternative, to obtain relief from the automatic stay with respect to the injunction against Stone. *Stone Res., Inc.*, Bankr. No. 11-11124, ECF No. 13. On March 2, 2011, the Bankruptcy Court denied MarbleLife's motion to dismiss and its request for relief from the stay. *Id.*, ECF No. 41.

MarbleLife appealed to the District Court. The appeal received its own civil case number but was assigned to the same judge who had previously issued a preliminary injunction against Stone. *In re Stone Res., Inc.*, Civ. No. 11-2526 (E.D. Pa.). On June 24, 2011, the District Court affirmed the Bankruptcy Court's denial of MarbleLife's motion to dismiss, but reversed the denial of relief from the automatic stay. The order reinstated the preliminary injunction; set new deadlines for Stone to comply; and reset the start-date for the 15 months' non-compete term with MarbleLife. *Id.*, ECF No. 11.

Stone filed a timely notice of appeal. Two months later, the District Court issued an opinion that further explained the reasoning behind its June 2011 order.[1] *Id.*, ECF No. 27.

## II.    Jurisdiction and Standards of Review

The District Court had jurisdiction to hear an appeal from the Bankruptcy Court's order pursuant to 28 U.S.C. § 158(a)(1). *See In re Graves*, 33 F.3d 242, 246 n.9 (3d Cir. 1994) (denial of relief from the automatic stay was "a final, appealable order in bankruptcy"). We have jurisdiction under 28 U.S.C. § 158(d)(1). Although contempt proceedings in this case continued even after the notice of appeal had been filed, such ancillary proceedings do not defeat § 158(d) finality. *See In re Marcal Paper Mills, Inc.*, 650 F.3d 311, 314 (3d Cir. 2011) (discussing this circuit's relaxed, "pragmatic," and "less technical" approach to finality under § 158(d) (citation and internal quotation marks

---

[1]    "As a general rule, the timely filing of a notice of appeal . . . divest[s] a district court of its control over those aspects of the case involved in the appeal." *Venen v. Sweet*, 758 F.2d 117, 120 (3d Cir. 1985). A District Court, however, retains the "limited authority to take any steps that will assist the Court of Appeals in its determination." *United States v. Pelullo*, 14 F.3d 881, 907 (3d Cir. 1994) (internal quotation marks and citation omitted); *see United States v. Scarfo*, 263 F.3d 80, 89 (3d Cir. 2001); Third Cir. L. App. R. 3.1 (2011). The District Court's explanatory opinion, although issued two months after Stone filed its notice of appeal, was in aid of our resolution of this appeal; therefore, we may consider it.

omitted)); *see also Univ. Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101 (3d Cir. 1981) (finding appellate jurisdiction despite the district court's remand to the bankruptcy court for an accounting, because "the district court conclusively determined the question presented by this appeal and awarded possession of the property to [the appellee]").

This Court exercises plenary review over the District Court's decision, using the same standard of review as the District Court in reviewing the Bankruptcy Court's determinations. *In re Winstar Commcn's, Inc.*, 554 F.3d 382, 389 n.3 (3d Cir. 2009). The Bankruptcy Court's legal determinations receive plenary review and its factual determinations are reviewed for clear error. *Fellheimer, Eichen & Braverman, P.C. v. Charter Tech., Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995). The Bankruptcy Court's decision whether to grant relief from the automatic stay is reviewed for abuse of discretion. *In re Myers*, 491 F.3d 120, 128 (3d Cir. 2007).

## III. Analysis

In this appeal, Stone argues that: (1) the District Court erred in reversing the Bankruptcy Court's denial of relief from the stay; and (2) the District Court exceeded its jurisdiction by modifying the terms of an injunction it had entered in a different (though closely related) case.

### A. The District Court's Grant of Relief from the Stay

Stone first contends that the Bankruptcy Court properly weighed the evidence when it declined to grant MarbleLife relief from the automatic stay in order to enforce the preliminary injunction it had obtained against Stone. It further contends that the District Court failed to give the Bankruptcy Court's findings due deference or to limit itself to the record before it. MarbleLife argues, and the District Court at least implicitly concluded, that because the injunction is not a "claim" within the meaning of 11 U.S.C. § 362(a), it is not and should not be subject to the automatic stay.

Assuming without deciding that the preliminary injunction is not a "claim" dischargeable in bankruptcy, we disagree that this is dispositive. The question presented to the Bankruptcy Court was not whether the injunction was dischargeable in bankruptcy; rather, it was whether MarbleLife was entitled to relief from the stay in order to *enforce* the injunction. Even if the injunction is not a claim, any action to enforce it is subject to the stay and cannot proceed without relief from the stay under one of the circumstances laid out in § 362(d). *See* 11 U.S.C. § 362(a)(1) (providing that a bankruptcy petition stays "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, *or* to recover a claim against the debtor"

8

(emphasis added)); *see also Matter of Udell*, 18 F.3d 403, 410 (7th Cir. 1994) (reversing the district court's finding that an injunction was a claim, but explaining that "[i]t does not necessarily follow that [the company] is entitled to relief from the stay").

Under § 362(d)(1), relief from a stay "shall" be granted "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). "Section 362(d)(1) does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case." *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997) (citation omitted). The Bankruptcy Court, examining the totality of the circumstances, concluded that MarbleLife was not entitled to relief from the stay. The District Court erred by failing to review this decision according to the proper standard – whether the Bankruptcy Court abused its discretion in denying relief, irrespective of whether the injunction is a "claim" dischargeable in bankruptcy.

The District Court also erred by failing to confine its review of this decision to the proper record. The District Court's jurisdiction in this case flows from 28 U.S.C. § 158(a). That statute limits the court's jurisdiction "to final decisions, judgments, orders, and decrees of the bankruptcy court." *S'holders v. Sound Radio, Inc.*, 109 F.3d 873, 880

(3d Cir. 1997) (citing 28 U.S.C. § 158(a)).  When reviewing such decisions, the District Court "sits as an appellate court"; it engages in no "independent fact finding."  *Nantucket Investors II v. Cal. Fed. Bank (In re Indian Palms Assocs., Ltd.)*, 61 F.3d 197, 210 n.19 (3d Cir. 1995).  Its jurisdiction is circumscribed in the same way that an appellate court's ordinarily is.  Accordingly, the District Court should not have decided the appeal on the basis of the record in another case.

For these reasons, we will vacate the District Court's June 24 order and remand for a determination based solely on the record before the Bankruptcy Court, of whether the Bankruptcy Court abused its discretion in denying relief.

**B.      The District Court's Power To Modify the Terms of Its Injunction**

The District Court also erred by modifying the terms of the injunction it had entered in a different case.  MarbleLife argues that the District Court has primary jurisdiction of all bankruptcy proceedings and is free to assert that jurisdiction over a bankruptcy proceeding *sua sponte*.  That is true enough, *see Cooper-Jarrett, Inc. v. Ctrl. Transp., Inc.*, 726 F.2d 93, 95-96 (3d Cir. 1984), but it does not answer the question whether a District Court sitting in appellate review of a Bankruptcy Court's decision has the power to venture beyond the bounds of the record on appellate review.  *Cooper-*

*Jarrett* concerned a different issue:  a District Court's power to grant a motion in a civil case – a forum in which it had original, not appellate, jurisdiction – that had the effect of resolving a complaint filed in Bankruptcy Court.  *Id.* at 94-95.  Here, the question is whether the District Court, when conducting § 158(a) review of a Bankruptcy Court's decision, has the power to modify an injunction entered in another action.  MarbleLife cites no precedent for such an act.  Although the District Court would have jurisdiction to modify the injunction if it were sitting as the court that had issued the injunction, given the limited scope of the District Court's § 158(a) review, it lacked jurisdiction to modify the injunction during the course of the appeal from the Bankruptcy Court.  We must therefore vacate its order modifying the injunction.

## IV.    Conclusion

For the foregoing reasons, we will vacate the District Court's order reversing the Bankruptcy Court's denial of relief, and remand for further proceedings consistent with this opinion.  We will also vacate the District Court's modification of the terms of the injunction it had entered in another case.