### In re Okan APAYDIN, Debtor.

### Okan APAYDIN and Gulseren L. Apaydin, Plaintiffs,

### v.

### CITIBANK FEDERAL SAVINGS BANK and Citicorp Mortgage, Inc., Defendants.

Bankruptcy No. 95–1890SR.

Adv. No. 96–146.

United States Bankruptcy Court, E.D. Pennsylvania.

Oct. 9, 1996.

Frederic J. Baker, Asst. U.S. Trustee, Philadelphia, PA.

Gary E. McCafferty, Law Offices of Joseph Beck, Jr., Philadelphia, PA, for Citibank.

Jack K. Miller, Philadelphia, PA, for Debtor.

Maurice R. Mitts, Middleman & Matour, PC, Philadelphia, PA, for Gulseren L. Apaydin.

Frederick L. Reigle, Chapter 13 Trustee, Reading, PA.

## OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

### Introduction

Presently before the court is plaintiff Gulseren L. Apaydin's motion for summary

718

judgment in the above captioned adversary proceeding. The plaintiffs filed the adversary proceeding under the Truth–In–Lending Act, 15 U.S.C. §§ 1601–1667e ("TILA"), and section 506 of the Bankruptcy Code, 11 U.S.C. § 506, with the objective of rescinding the mortgage on their residence and having the creditor's lien declared void.

According to the plaintiffs, the mortgage may be rescinded because the defendants failed to provide them with adequate disclosure of their rights when the transaction, a refinancing of their home mortgage, was consummated on February 14, 1994. Specifically, plaintiffs contend that they never received a clear and conspicuous notification of the statutory three-day waiting period during which TILA permits prospective obligors to reconsider and cancel transactions that will result in a lien being placed on their residence. The Apaydins contend that their receipt of a defective rescission notice has resulted in the extension of their rescission rights by up to three years, permitting them in October, 1995, to rescind defendants' mortgage. Based on their right to rescind the mortgage, plaintiffs request that the mortgage be declared void under section 506 of the Code, 11 U.S.C. § 506, and that the defendants be treated as unsecured creditors in this bankruptcy.

■ The Court finds that a violation of TILA has occurred, but that plaintiffs' request to have the mortgage voided is nevertheless premature. The voiding of a mortgage under TILA is not the automatic result of a request for rescission. Rather, to prevent a debtor from receiving a windfall, the voiding of a mortgage may be conditioned on the debtor tendering back to the creditor the consideration underlying the transaction. Therefore, the Court will grant the plaintiffs' request for summary judgment, in part, by determining that the defendants violated TILA section 1635(a), 15 U.S.C. § 1635(a), and its implementing regulation 12 C.F.R. § 226.2. The Court shall refrain from crafting a remedy for the violation, however, pending a further hearing to determine the issue of damages.

### Jurisdictional Statement

The Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1334. The case constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) & (K) that the Court may hear and determine.

### Background

Plaintiff/debtor Okan Apaydin co-owns along with his wife, plaintiff Gulseren L. Apaydin, residential real estate located at 213 Orchard Way, Wayne, Pennsylvania. On January 14, 1994, the plaintiffs refinanced the mortgage on their house with a mortgage loan obtained from Citibank Federal Savings Bank. The mortgage was serviced by Citicorp Mortgage, Inc. On or about May 23, 1995, the mortgage was assigned from Citibank to State Street Bank and Trust Co., but servicing continued thereafter through Citicorp.

Due to financial problems stemming from the bankruptcy of the family business, Okan's Food, Inc., (Bankr. No. 95–10044SR) the plaintiffs experienced difficulty paying their mortgage. Mortgage payments went into arrears, prompting Citicorp to file a foreclosure proceeding in the Court of Common Pleas, Delaware County, Pennsylvania. The plaintiffs contested the foreclosure proceeding, but judgment was entered against them on July 14, 1995, in the amount of $457,523.72 following a motion for summary judgment by Citicorp. Their house was scheduled for sheriff's sale on Friday, October 20, 1995.

By October 13th, the plaintiffs had engaged their present counsel who, upon reviewing their case, discovered a potential TILA violation in the form of certain irregularities surrounding the form and manner in which the plaintiffs were notified of their rescission rights. It was discovered that the TILA notification form provided to the plaintiffs was defective because it failed to indicate Citibank's business address or state the date the rescission period had expired. Moreover, it also came to light that at the closing Citibank immediately funded the loan and required the plaintiffs to sign an additional undated form in which they acknowledged that the three-day rescission period

had already expired without them exercising their right to rescind the transaction.

Based on these alleged TILA violations, the plaintiffs wrote Citicorp to express their desire to cancel the mortgage loan and rescind the transaction. The plaintiffs also filed an emergency motion in the Delaware County Court of Common Pleas to stay the sheriff's sale. At the hearing on the emergency motion, the Court of Common Pleas indicated that it would deny the plaintiffs' request to stay the sale, and on October 24, 1995, after the debtor filed bankruptcy, the court issued an order to that effect.

On October 19, 1995, Okan Apaydin initiated the instant bankruptcy case by filing a voluntary petition for relief under Chapter 13. This move had the effect, of course, of stopping the sheriff's sale that was scheduled to occur the next day. On February 14, 1996, the debtor, together with his wife, filed the complaint underlying the present adversary proceeding. The complaint, based on the above described allegations, includes claims under TILA, 15 U.S.C. § 1635, and 12 C.F.R. § 226.23; the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.S. §§ 201–1 et seq.; and section 506 of the Bankruptcy Code, 11 U.S.C. § 506. In additional to avoiding the mortgage, the complaint seeks statutory damages along with attorneys fees and costs.

On June 29, 1996, plaintiffs filed the motion presently at issue seeking summary judgment on the TILA violations and an order avoiding the mortgage on their house. The motion is supported by the affidavit of Gulseren L. Apaydin, which relates all of the facts relied upon by the plaintiffs in support of their motion, most of which are summarized above. The defendants responded to the motion, objecting to the merits of plaintiffs' request and also indicating that plaintiffs were barred by res judicata and collateral estoppel from raising TILA violations subsequent to the litigation of the foreclosure action. The defendants primary objection to the merits of plaintiffs' claims, however, is simply that the defendants have not yet had sufficient time to engage in discovery. If given time, the defendants hypothesize that they may uncover a correctly completed rescission notification form. The defendants response is supported by the affidavit of Charles H. Stern, an Assistant Vice President for one of the defendants. The facts set forth in Mr. Stern's affidavit do not contradict those set forth in Ms. Apaydin's affidavit.

The court held a hearing on the motion on August 29, 1996, at which time both sides appeared and presented argument. The crux of the plaintiffs' position was that TILA gives them an absolute right to rescind the transaction and cause the mortgage to be voided. Citicorp admitted that based on the present record a TILA violation appears to exist, but countered that its mortgage is not automatically and unconditionally voided as a result of the Apaydins' request for rescission. Instead, Citicorp posited that the court had discretion to regulate the manner in which the rescission of its mortgage is to occur in order to protect the rights of both parties, including especially the right of Citicorp to the return of its property. Following the hearing both parties submitted memorandums of law. The matter accordingly is ripe for disposition.

### *Discussion*

#### I.

Rule 56 of the Federal Rules of Civil Procedure governing summary judgment is made applicable in the bankruptcy court by Bankruptcy Rule 7056. Pursuant to Rule 56 summary judgment should be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c). The Court's role in applying this rule is not to weigh the evidence but to determine only whether there is a disputed, material fact for determination at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). All reasonable inferences must be drawn in favor of the nonmoving party and against the movant. *United States v. Premises Known as 717 South Woodward Street*, 2 F.3d 529, 533 (3rd Cir.1993). To successfully

oppose summary judgment, a nonmoving party may not rest on his pleadings, but must designate specific factual averments through the use of affidavits or other permissible evidentiary material that demonstrate a triable factual dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 247–50, 106 S.Ct. at 2510–11. Such evidence must be sufficient to support a jury's factual determination in favor of the nonmoving party. *Id.* Evidence that merely raises some metaphysical doubt regarding the validity of a material facts is insufficient. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If the party opposing the motion believes that summary judgment is premature, Rule 56(f) requires the party to present by affidavit the reasons why the party is presently unable to submit evidence in opposition to the motion. *Celotex,* 477 U.S. at 326, 106 S.Ct. at 2554.

## II.

The Court will first address three nonsubstantive issues raised by the defendants in an effort to block consideration of the merits of the Apaydins' adversary proceeding. The defendants assert that the Court is prevented from addressing the Apaydins' TILA claims subsequent to the entry of the foreclosure judgment based on the doctrines of res judicata, collateral estoppel and merger. Upon analyzing these arguments, the Court finds them to be unpersuasive.

 Based on Pennsylvania law, the existence of the foreclosure judgment does not render the plaintiffs' TILA claims res judicata. Federal courts are required to give state court judgments the same full faith and credit to which they would be entitled under state law. 28 U.S.C. § 1738; *In re Graves,* 33 F.3d 242, 247 (3rd Cir.1994); *Allegheny International, Inc. v. Allegheny Ludlum Steel Corp.,* 40 F.3d 1416, 1429 (3rd Cir.1994). Under the law of Pennsylvania, the entry of a judgment bars the relitigation of all claims and defenses that were or could have been raised in a prior law suit between the same parties. *Allegheny International,* 40 F.3d at

1429; *Zarnecki v. Shepegi,* 367 Pa.Super. 230, 238, 532 A.2d 873, 877 (1987).

In *Del Turco v. Peoples Home Savings Association,* 329 Pa.Super. 258, 478 A.2d 456 (1984), the Pennsylvania Superior Court dealt with the application of res judicata in an analogous factual setting. The plaintiff in *Del Turco* had been the owner of commercial real estate that was sold at a foreclosure sale. Following the sale the plaintiff filed a law suit against the foreclosing creditor raising a variety of claims relating to the creditor's pre-foreclosure treatment of the mortgage. Several of plaintiffs claims asserted that the creditor had failed to properly credit plaintiff's loan account due to, among other things, the misapplication of undistributed loan funds and rental proceeds. The plaintiff also complained that the creditor received excessive attorney's fees. The Superior Court analyzed whether the plaintiff's claims were barred by res judicata under section 22 of the Second Restatement of Judgments. In pertinent part, the Restatement indicates:

> (1) Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2).

> (2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:

>> (a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or

>> (b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.

Restatement (Second) of Judgments § 22 (1980). Applying subsection (2)(b) of section 22 of the Restatement, the court found that the objectives plaintiff sought to obtain in his suit would have the effect of undermining the creditor's previous foreclosure judgment and therefore ruled that plaintiff's claims were res judicata. The court concluded that the

plaintiff should have raised the claims in the prior foreclosure action.

On the surface, *Del Turco* would appear to require a finding that the Apaydin's TILA claim is also barred by res judicata. If successful, the Apaydins' TILA claim will certainly have the effect of undermining Citicorp's foreclosure judgment. Nevertheless, the present case differs from *Del Turco* in at least one crucial respect that leads the Court to a different conclusion. Pennsylvania courts have ruled that a defendant may not raise TILA as a counterclaim in a mortgage foreclosure action. *New York Guardian Mortgage Corp. v. Dietzel,* 362 Pa.Super. 426, 524 A.2d 951 (1987); *Fleet Real Estate Funding Corp. v. Smith,* 366 Pa.Super. 116, 530 A.2d 919 (1987). In *New York Guardian Mortgage Corp. v. Dietzel,* 362 Pa.Super. at 430–30, 524 A.2d at 953, the court affirmed a trial court's determination that a defendant in a foreclosure case was not permitted to advance a counterclaim based on TILA. According to the court, the interjection of a TILA counterclaim was incompatible with the foreclosure proceeding because the TILA claim was in personam in nature, whereas the foreclosure action was strictly in rem.

■■■■ Thus, as applied to the Apaydin's TILA claim, Citicorp's res judicata argument must fail. Res judicata only bars the litigation of claims that could have actually been raised in a prior proceeding. With respect to a litigant who was a defendant in a prior case, section 22 of the Restatement expressly requires as a predicate to the imposition of res judicata that the litigant was able to interpose his claim as a counterclaim in the former case. Where a party lacked the ability to bring a counterclaim, res judicata is not a bar to the assertion of that claim in a separate and subsequent law suit. The present case, constitutes the Apaydins' first opportunity to raise their TILA claim against Citicorp, and, therefore, it cannot be barred. This same conclusion was reached by the bankruptcy court in *In re Woolaghan,* 140 B.R. 377 (Bankr.W.D.Pa.1992), where the court also permitted a debtor to litigate a TILA claim against a creditor following entry of a state court foreclosure judgment.

■■■ Citicorp's assertion that the TILA claim is barred as a result of collateral estoppel is similarly misplaced. Collateral estoppel, or issue preclusion as it is also known, bars a litigant from raising an issue that was already decided in a prior case. *In re Graves,* 33 F.3d at 247; *Zarnecki,* 367 Pa.Super. at 239, 532 A.2d at 878. In contrast to res judicata, which bars the relitigation of all issues that could have been raised in a prior case regardless of whether they were actually addressed, collateral estoppel applies only to issues that were litigated and decided. Collateral estoppel, thus, has no application in the present case where the Apaydins' TILA claim was never previously litigated.

■■■ The Court is also not prevented from ruling on the Apaydin's claim as a result of the doctrine of merger. According to this doctrine, the Apaydins' mortgage merged into the foreclosure judgment and thereafter ceased to exist. *In re Stendardo,* 991 F.2d 1089, 1095 (3rd Cir.1993). Citicorp argues that since the mortgage merged with the judgment there is no longer a security interest to avoid as defined by 12 C.F.R. § 226.23(d)(1) which states, "[w]hen a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void...." *Id.* According to Citicorp, only the mortgage, and not the judgment, constitutes a security interest giving rise to a right of rescission, and, since the mortgage no longer exists, the Apaydin's may no longer effect a rescission.

Citicorp's argument must be rejected because it misconstrues the source of plaintiffs' rescission right. The right of rescission does not emanate from plaintiffs' mortgage such that it disappears after the mortgage is merged with the judgment. Rather, plaintiffs rescission rights arises from TILA and the regulations promulgated thereunder. 15 U.S.C. § 1635; 12 C.F.R. § 226.23. Thus, the fact that the mortgage no longer exists is immaterial to whether the plaintiffs retain the ability to rescind Citicorp's security interest in their house. This right continues to exist based on TILA which, unlike the terms of the plaintiffs' mortgage, is unaffected by the entry of the judgment.

*In re Stendardo,* 991 F.2d at 1089, which is cited by Citicorp, is clearly distinguishable. In *Stendardo,* the court held that the debtor's obligation under a mortgage to pay taxes and property insurance ceased to exist upon the merger of the mortgage into the creditor's foreclosure judgment. The basis for the court's ruling was that the terms of the mortgage binding the debtor to pay the taxes and insurance disappeared upon entry of the judgment. Under this rationale, however, the debtor's obligation to pay these expenses would have continued following judgment if they were based on a source of law independent of the mortgage and thus immune from the affects of merger. The Apaydins' right to assert a claim for rescission is, of course, based on a source of law independent from the mortgage. Their right of rescission is based on TILA which was in no way affected by the merger of the mortgage into a foreclosure judgment.

According to TILA itself, the right to rescind a transaction terminates only after the passage of three years or the sale of the property. 12 C.F.R. § 226.23(a)(3). The TILA statute and regulations are, in fact, clear and unambiguous on this point. Citicorp is, in effect, asking the Court to ingraft a third termination point upon the statute based on the doctrine of merger. This Court will, however, apply the statute as written and hold that the Apaydin's right to rescind for an improperly disclosed transaction is not impaired by the entry of a foreclosure judgment.

### III.

Having resolved the defendants' nonsubstantive arguments against them, the Court will now address the merits of the plaintiffs' TILA claim.

The Apaydins assert that when they refinanced their mortgage Citicorp failed to give them appropriate notice of the three-day cooling off period which TILA dictates that consumers in the Apaydins' circumstances must receive. Consequently, the Apaydins argue, the period in which they had to rescind the transaction was extended for up to three years, permitting them to cancel it in October, 1995. The Apaydins' claim is based on section 226.23 of Regulation Z which in pertinent parts, provides:

(a) *Consumer's right to rescind.* (1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction. . . .

. . . . .

(b) *Notice of right to rescind.* In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires.

(c) *Delay of creditor's performance.* Unless a consumer waives the right of rescission under paragraph (e) of this section, no money shall be disbursed other than in escrow, . . . until the rescission period has expired and the creditor is reasonably satisfied that the consumer has not rescinded.

. . . . .

(e) *Consumer's waiver of right to rescind.* (1) The consumer may modify or waive the right to rescind if the consumer determines that the extension of credit is needed to meet a bona fide personal financial emergency. To modify or waive the right, the consumer shall give the creditor a dated written statement that describes the emergency, specifically modifies or waives the right to rescind, and bears the signa-

ture of all of the consumers entitled to rescind. Printed forms for this purpose are prohibited....

12 C.F.R. 226.23.

■ Upon reviewing the applicable documents, it is beyond dispute that Citicorp violated these disclosure requirements in several respects. The disclosure form provided to the Apaydins failed to contain Citicorp's business address or state the date the rescission period expired. The use of a preprinted waiver form was also a direct violation of subsection (e) which prohibits the use of such forms and indicates that a waiver may only be obtained in the event of a bona fide emergency. Moreover, the use of the waiver form together with the disbursement of the loan funds at closing had the overall effect of rendering the disclosures less than clear and conspicuous. In the waiver form, which was undated, the Apaydins acknowledged, to "induce [the] lender to disburse the proceeds", that three days had already elapsed and that they had elected not to exercise their right of rescission. Consequently, when the Apaydins left the closing it is doubtful they had any clear idea of their continuing ability to cancel the transaction. They had already received the funds and signed a paper acknowledging the passage of the three-day time period.

These events are quite similar to the facts of *Rodash v. AIB Mortgage Co.*, 16 F.3d 1142 (11th Cir.1994), in which the court also found that the simultaneous receipt of notification and waiver forms rendered the notice of the consumer's right to cancel unclear. The court commented that the receipt of contradictory forms precluded the possibility of the consumer receiving a clear and conspicuous disclosure of his or her right to cancel the transaction.

On the current record Citicorp does not necessarily dispute these conclusions but instead argues that the determination of a TILA violation is so fact sensitive that a decision should be reserved until trial. As demonstrated above, however, the violations committed by Citicorp are sufficiently clear cut that they may be decided on summary judgment. Citicorp has not presented any evidence to contradict the material portions of the plaintiffs' affidavit or documentation.

Citicorp has not even denied the authenticity of the notification and waiver forms plaintiffs presented. There is simply no material factual dispute to stand in the way of the resolution of plaintiffs' motion.

Citicorp's counsel represents, though not by affidavit, that summary judgment should be postponed to provide time for the defendants to complete discovery. In support of this request, Citicorp points out that it was delayed engaging in discovery due to participating in extensive settlement negotiations with the Apaydins. Citicorp argues that as a result of discovery, it may uncover from the Apaydins or the title insurance company a correctly completed disclosure form that does not violate TILA. Although Rule 56 permits a party to indicate by affidavit the reasons why summary judgment may be premature, the Court finds that the reasons advanced by Citicorp are not sufficient, even assuming they were presented by affidavit. The Court is highly skeptical that a correctly completed disclosure form will be forthcoming from the Apaydins. Citicorp, moreover, has made no showing of why it needs to use formal discovery tools to obtain records from the title company. The Court discerns no reason why the title company would not voluntarily permit Citicorp to review its files without the use of discovery had Citicorp so requested. Furthermore, even if a correctly completed form was located it is doubtful that Citicorp will be extricated from a finding that it violated TILA. The presence of an additional notification form, even correctly completed, will not cure the various violations caused by the waiver form, and, viewing events as a whole, is likely to further demonstrate the confusion that occurred at closing rather than show that the Apaydins received clear and conspicuous notification of their right to rescind the transaction. There is simply no reason to believe that discovery will yield any evidence that will benefit the defendants' cause.

■ Contrary to the plaintiffs' contentions, however, Citicorp's TILA violations do not automatically cause the mortgage on the property to become void. In this respect, Citicorp correctly points out that TILA gives courts the power to regulate the manner in

724

which a consumer may exercise the right of rescission. 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d)(4). The large majority of courts hold that this power enables them to condition the avoidance of a creditor's security interest on the return of its property by the consumer. *Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1142 (11th Cir.1992); *F.D.I.C. v. Hughes Development Co.*, 938 F.2d 889, 890 (8th Cir.1991), *cert. denied sub nom. Hughes Development Co. v. Great Plains Capital Corp.*, 502 U.S. 1099, 112 S.Ct. 1183, 117 L.Ed.2d 426 (1992); *Rudisell v. Fifth Third Bank*, 622 F.2d 243, 254 (6th Cir.1980); *La Grone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir.1976); *Powers v. Sims and Levin*, 542 F.2d 1216, 1221–22 (4th Cir. 1976); *Aquino v. Public Finance Consumer Discount Co.*, 606 F.Supp. 504, 508–09 (E.D.Pa.1985); *In re Buckles*, 189 B.R. 752, 766 (Bankr.D.Minn.1995); *In re Lynch*, 170 B.R. 26, 29–30 (Bankr.D.N.H.1994). The purpose of rescission as a remedy is to undo a transaction and place the parties in the same position they would occupy had the transaction not occurred. *E.g. Williams*, 968 F.2d at 1140. As most courts have found, this goal must at times be accomplished by appropriately conditioning the avoidance of the creditor's security interest on the return of its property. *Id.* at 1142 ("we hold that a court may impose conditions that run with the voiding of a creditor's security interest upon terms that would be equitable and just to the parties in view of all surrounding circumstances").

■ A distinct minority of courts have issued opinions in which they declined to condition the rescission of a lending transaction on the return of property by the debtor. *In re Celona*, 90 B.R. 104 (Bankr.E.D.Pa. 1988) *affirmed* 98 B.R. 705 (E.D.Pa.1989); *In re Piercy*, 18 B.R. 1004 (Bankr.W.D.Ky. 1982). These decisions were issued in the context of bankruptcy proceedings and resulted in the creditor's claim becoming unsecured. Unlike the present case, however, these cases involved relatively minute sums of money. The loan at issue in *Piercy* totaled $6,819.93 and in *Celona* only $5,197.50 was at stake. Although these courts emphasized in their opinions the need to strictly enforce TILA against errant creditors, this Court cannot accept the proposition that the strict enforcement of TILA justifies rendering a debt in excess of $450,000 unpaid and completely unsecured. Even though the defendants engaged in flagrant violations of TILA, automatically relegating their entire claim to unsecured status would be an utterly disproportionate and completely inequitable penalty, far in excess of the results in *Celona* or *Piercy*. The Court agrees with the observation in *Buckles*, 189 B.R. at 765, that rescission, as an equitable remedy, is not meant to be punitive. Accordingly, the Court will, at least to some extent, condition the avoidance of Citicorp's security interest on the return of its money by the plaintiffs.

■ Lastly, the Court finds no merit in the defendants' final argument that the Apaydins rescission rights are limited due to the fact that the subject loan was a refinancing of their mortgage. Although Regulation Z limits the ability of debtors to rescind a loan that is a refinancing to the extent of the additional indebtedness incurred, this limitation applies only to a refinancing by the same creditor to whom the debtor was previously indebted. 12 C.F.R. § 226.23(f)(2). In this case, however, there are no facts of record to show that Citicorp was the previous holder of the Apaydins' mortgage. In fact, neither parties' affidavit indicates the identity of the Apaydins' prior mortgagee. Despite the Court's obligation to draw inferences in favor of the nonmoving party, there is no basis to infer that Citicorp was the prior lender. A loan is as likely to be refinanced by a current lender as it is by a new lender. If anything, based on the TILA disclosure statement provided to the Apaydins, the record indicates that Citicorp did not hold the prior mortgage. If Citicorp was the prior mortgagee, it should have provided the Apaydins with a different form of TILA disclosure statement indicating that the only rescindable portion of the loan was the excess amount. Instead, consistent with being a new lender, Citicorp gave the Apaydins a disclosure statement indicating that the entire amount of the loan was subject to rescission. These facts, which are in the record and not disputed, demonstrate that Citicorp first became the Apay-

dins' creditor in 1994 when it refinanced the Apaydins' mortgage.

## IV.

In conclusion, the Court has determined that a violation of TILA has occurred entitling the Apaydins to rescind their mortgage. For this reason the Plaintiffs' motion for summary judgment is granted on the issue of liability. The Court nevertheless has the power to condition the rescission of the mortgage on the return to Citicorp of its property by the plaintiffs, and, thus, the Court holds that Citicorp's mortgage on the Apaydins' home is not avoided. The Court will determine the specific remedies and damages to be accorded the plaintiffs following a hearing to address these issues.

## *ORDER*

AND NOW, this 9th day of October, 1996, upon consideration of Gulseren L. Apaydin's Motion For Partial Summary Judgment, the defendants' response thereto, and after notice and hearing, it is ORDERED:

1. The motion is GRANTED as to liability only. It is hereby determined that the Apaydins did not receive clear and conspicuous notification of their right under the Truth–In–Lending Act, 15 U.S.C. § 1635, 12 C.F.R. § 226.23, to rescind the loan refinancing their mortgage.

2. Plaintiffs' request to declare the mortgage on their property void is DENIED.

3. The issue of how plaintiffs shall be permitted to effect the rescission of their mortgage, if that remains their desire, along with all other issues as to damages shall be determined at a future hearing.