**In re Quetzy CRUZ, Debtor.**

**Quetzy Cruz, Plaintiff**

**v.**

**Household Finance Consumer Discount Company, Defendant.**

**Bankruptcy No. 03–17888 SR.**
**Adversary No. 03–1152.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 1, 2004.

---

Alan M. White, Community Legal Services, Philadelphia, PA, for Plaintiff.

Herbert P. Henderson, II, Pecht & Associates, PC, Elizabethtown, PA, for Defendant.

1. 15 U.S.C. § 1601 et seq. (TILA)

2. 41 P.S. § 101 et seq. (Act 6)

3. 73 P.S. § 201-1 et seq. Like most American jurisdictions, Pennsylvania has enacted a statute which is generically known as a law prohibiting and punishing "unfair or deceptive acts and practices," i.e., a UDAP statute, specifically the Unfair Trade Practices and Consumer Protection law, 73 P.S. § 201-1, et seq. (referred to hereafter as "UDAP").

OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

### Introduction

The Plaintiff filed this adversary proceeding alleging violations of the Truth in Lending Act [1], the Pennsylvania Usury Law [2], and the Pennsylvania Uniform Trade Practices and Consumer Protection Law [3] arising out of a mortgage loan. Trial on the matter was held on September 22, 2004. The parties have submitted Findings of Fact and Conclusions of Law (FF/CL). For the reasons set forth below, judgment will be entered in Plaintiff's favor and against Defendant on all three counts.[4]

### Factual Background

The sole version of events offered came from the Debtor (via her Nilda Sanchez, the mother the Debtor and co–Obligor). Household offered no testimony of its own. Ms. Sanchez recalls that sometime prior to February 23, 2001,[5] she received a mail solicitation from Household. It offered a cash advance of $2000. Transcript (T) 10. Ms. Sanchez accepted that money and sometime later received another letter from Household reminding her that she had to repay the advance and offering to lend her more money. T–11. This prompted Ms. Sanchez to go to Household's office in Philadelphia to discuss a loan for about $17,000 to $20,000. *Id.*

4. Because the Complaint seeks to avoid a secured interest in the Debtor's property, it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). That subparagraph includes among core proceedings "determinations of the validity, extent, or priority of liens."

5. This is the earliest date on the loan documents. D–2.

Household informed her that for a loan in that amount, it would require a mortgage on her home. T–12. Ms. Sanchez owned her home jointly with the Debtor. *Id.* Household instructed Ms. Sanchez to return with her daughter to sign the loan papers. *Id.*

Ms. Sanchez and her daughter returned to Household's offices to sign the loan documents. T–13. She specifically recalls not being permitted to read what she was signing. *Id.* Among the papers was a form disclosing that the charge for credit insurance was a voluntary charge. T–14. Ms. Sanchez recalls not reading this form because Household told her and her daughter that they had to sign it. *Id.*

After making a number of payments (to which the parties have stipulated), the Debtor defaulted under the loan and this bankruptcy followed.

*The TILA Claims*

The TILA count alleges three separate violations: that Household failed to notify Debtor of her right to rescind the loan; that it charged the Debtor an illegal rate of interest; and that it understated the amount of the finance charge by not including the cost of the credit insurance.

*Disclosure of the Rescission Right*

■ The Debtor's first TILA claim is that Household failed to notify her of her right to cancel the loan. T–3. In that regard, TILA § 1635 provides, in pertinent part:

(a) Disclosure of obligor's right to rescind

Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security in-terest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. *The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.*

15 U.S.C. § 1635(a) (emphasis added). But with any TILA question, statutory analysis is not enough; the interpretative regulation (here, Regulation Z) must also be consulted. *See Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980) ("Congress has specifically designated the Federal Reserve Board and staff as the primary source for interpretation and application of truth in lending law"). Regulation Z § 226.23 provides:

(b) *Notice of right to rescind.* In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic com-

munication as provided in § 226.36(b)). The notice shall be on a separate documents that identifies the transaction and shall clearly and conspicuously disclose the following:

(I) The retention or acquisition of a security interest in the consumer's principal dwelling.

. . .

(iv) The effects of rescission, as described in paragraph (d) of this section. 12 C.F.R. § 226.23(b) (emphasis added).

*Did Household Disclose to the Debtor her Rescission Right?*

■ Household gave the Debtor the following notice:

## NOTICE OF RIGHT TO CANCEL

**BORROWER'S NAME AND ADDRESS:**
CRUZ, QUETZY
SANCHEZ, NILDA L
2134 E MONMOUTH ST
PHILADELPHIA PA 19134

**LOAN NO:** 717115–00–986262

### YOUR RIGHT TO CANCEL

You are entering into a new transaction and you have agreed to give us a mortgage, lien, or security interest on your home in this transaction. You have a legal right under federal law to cancel this transaction and the new mortgage, lien or security interest in your home, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction which is 2/23/01 or such later date you sign your loan documents; or

(2) the date you received your Truth–In–Lending disclosures for this transaction; or

(3) the date you received this notice of your right to cancel.

(_) **New Loan:** *You are entering into a transaction that will result in a mortgage, lien or security interest on your home. Your have a legal right under federal law to cancel this transaction as stated above. If you cancel this transaction, the mortgage, lien or security interest is also canceled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien or security interest on your home has been canceled and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.*

(_) **Refinancing:** *Existing Loan: Your are entering into a new transaction to increase the amount of credit previously provided to you by us. Your home is the security for this new transaction. You have a legal right under federal law to cancel this transaction as stated above. If you cancel this new transaction, it will not affect any amount that you presently owe. Your home is already the security for that amount. Within 20 calendar days after we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your does not secure the increase of credit. We must also return any money you have give to us or anyone else in connection with this new transaction.*

If you cancel the transaction, You may keep any money or property we have given you until we have done the things mentioned above, but must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing at
HOUSEHOLD FINANCE CONSUMER DISCOUNT COMPANY
7300 BUSTLETON AVE
PHILADELPHIA PA 19152

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of 2/27/01

(or midnight of the third business day following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_____

Consumer's Signature Date

I certify that I received this Notice in duplicate.
_____ SEAL
_____ SEAL _____ SEAL

Ex. D–7. The Debtor maintains that this notice does not constitute adequate disclosure of her right to cancel this loan.

In reviewing the effectiveness of the purported disclosure, the Court concurs with the Debtor's contention that Household created a hybrid disclosure form from two of the Model Forms. T–4. Household combined text from Model Form H–9 (dealing with refinancing of an existing loan) with Model Form H–8 (original debt secured by a lien on the borrower's home). *Compare* Form H–8 and H–9, 12 C.F.R. Pt. 226, App. H. Specifically, it takes from Form 9 language found in two separate paragraphs and combines in the paragraph which begins "**Refinancing Existing Loan.**" *Compare* Ex. D–7 with Model Form 9. It also inserts the words "new" into the first paragraph from Form 8 which begins under the words "YOUR RIGHT TO CANCEL." *Compare* D–7 with Form 8. And lastly, it adds to the paragraph from Form 8 which explains the effect of cancellation the words "**New Loan:** Your are entering a transaction that will result in a mortgage . . . on your home. You have a legal right under federal law to cancel this transaction as stated above." *Compare, id.* The apparent intent of these changes is to expand the functionality of the forms: Household would use one form for new loans as well as refinances. But did the form which was given to the Debtor apprise her of her rescission right?

The Court finds nothing wrong with the *arrangement* of the information in the notice. Section 1604 allows the creditor to rearrange the format so long as the change does not affect the substance, clarity or meaningful sequence of the disclosure. *See* 15 U.S.C. § 1604(b). Under both TILA itself and Regulation Z, the test is whether the form of notice that Household provided constitutes a clear notice of the Debtor's right to rescind the loan. *See Porter v. Mid–Penn Consumer Discount Co.*, 961 F.2d 1066, 1076 (3d Cir. 1992) ("the law does not require an ideal notice of rescission rights, just a clear, accurate and conspicuous one"). Clarity is a function of whether the notice is subject to more than one plausible or sensible interpretation. *Porter*, 961 F.2d at 1077. If the notice is subject to two or more sensible readings, and different results ensue depending upon which of the two readings is adopted, the creditor has not provided the consumer with "clear notice of what [the] right to rescind entail[s]." *Id.*

The Debtor asserts that Household has made the disclosure unclear by failing to fill out the form completely: Household never checked off whether the notice ap-

plied to new loan or a refinance. Debtor's FF/CL, ¶ 53. Household disagrees relying on TILA § 1635(h) which provides:

An obligor shall have no rescission rights arising solely from the form of written notice used by the creditor to inform the obligor of the rights of the obligor under this section, if the creditor provided the obligor the appropriate form of written notice published and adopted by the Board, or a comparable written notice of the rights of the obligor, *that was properly completed by the creditor,* and otherwise complied with all other requirements of this section regarding notice.

15 U.S.C. § 1635(h)(emphasis added); *see also* Household's Conclusion of Law, ¶ 3.

In reviewing the notice, the Court finds that it would have constituted sufficient disclosure of the rescission right *if it had been properly completed.* But it was not. Household simply did not indicate on the form whether this was a new loan or a refinance and that created ambiguity. In its present form, the notice allows for two plausible readings. The Debtor might have read it to apply to the refinancing of the existing debt, in which case the effect of rescission would be to restore the creditor's secured position to the status quo ante. Or she might have understood from the notice that she was taking out a new loan, in which case rescission would free her home from all encumbrances that arose from the advance of both old and new money. The difference between the two scenarios could not be more important to the Debtor. In sum, the notice of right to rescind in this case is defective because it does not disclose what would be the effect of choosing to rescind. The notice left her uninformed as to what rights—as well as what duties—would arise from that choice.[6]

*Whether the Act 6 Violation May Constitute a TILA Violation*

■ The Debtor's second TILA claim involves the rate of interest charged. T–4. She maintains that when a TILA disclosure is computed on the basis of an illegal interest rate, there is a resulting failure to disclose. Debtor's FF/CL, ¶ 57. Cases in this circuit have held that a recitation in a TILA disclosure statement which violates of state law may, in some circumstances, constitute a violation of TILA. *In re Brown,* 134 B.R. 134, 144 (Bankr.E.D.Pa. 1991) (finding that interest rate stated in TILA disclosure was usurious under state law also constituted a TILA violation); *Reid v. Liberty Consumer Discount Co.,* 484 F.Supp. 435, 440–441 (E.D.Pa.1980) (holding that failure of creditor to make a UCC-required disclosure is a violation of TILA). Did Household violate Act 6?

*The Act 6 Claim*

The Debtor maintains that the annual percentage rate of interest charged, 14.884 %, is usurious. T–4. Under section 301(b),(c), and (e) of Act 6, that maximum fixed rate for residential mortgages must conform to a figure published monthly by the Pennsylvania Secretary of Banking which varies depending upon the monthly index of federal bond yields. The parties agree that for February 2001 that rate was 8.5 %. *See* Joint PreTrial Statement, p. 2, ¶ 16. They also agree that Household's mortgage is a "residential mortgage" as defined by Act 6. *Id.* ¶ 15.

■ Although Household does not raise the issue, the Debtor maintains that Act 6 is not preempted by federal law. T–4, 5. Debtor here is referring to the De-

---

**6.** The Court also observes that the Notice of Right to Rescind does not appear to be signed by the Debtor. However, this is not mentioned in the pleadings or in the transcript.

pository Institutions Deregulation and Monetary Control Act, 12 U.S.C. § 1735f–7a, which provides, in pertinent part:

> The provisions of the constitution or laws of any State expressly limiting the rate or amount of interest, discount points, finance charges, or other charges which may be charged, taken, received, or reserved shall not apply to any loan, mortgage, credit sale, or advance which is—
>
> (A) *secured by a first lien on residential real property,* by a first lien on all stock allocated to a dwelling unit in a residential cooperative housing corporation, or by a first lien on a residential manufactured home;
>
> (B) made after March 31, 1980; and
>
> (C) described in section 527(b) of the National Housing Act. . . .

12 U.S.C. § 1735f–7a(a)(1) (emphasis added). Thus for Act 6 to be preempted here, all three of the above-requirements must be met. *Smith v. Fidelity Consumer Discount Co.,* 898 F.2d 907, 910–911 (3d Cir. 1990). The creditor bears the burden of proving preemption. *In re Russell,* 72 B.R. 855, 867 (Bankr.E.D.Pa.1987). Because the parties have stipulated that Household's secured interest in the Debtor's home is a *second* mortgage, there is no preemption here. *See Fidelity Financial Services, Inc. v. Hicks,* 214 Ill.App.3d 398, 406, 158 Ill.Dec. 221, 574 N.E.2d 15, 21 (Ill.Ct.App.1991) (holding that Illinois usury statute not preempted where loan was secured by junior mortgage). This loan is therefore subject to Act 6. The Court finds that disclosing a rate of interest which is illegal constitutes a misrepresentation regarding the true cost of credit and is, consequently, a violation of TILA.

*Whether Household Properly Disclosed the Insurance Charge*

█ The third alleged TILA violation pertains to the charges for credit insurance. T–5, 6. The Debtor maintains that those charges were included by Household in the amount financed when TILA required them to be in the finance charge. Debtor's FF/CL, ¶ 58. Household responds that the Debtor agreed to the payment of such insurance as reflected by her signature on Exhibit D–1 [7]. Implicitly then, Household maintains that the credit insurance charge was properly included in the amount financed because it was voluntary.

TILA requires that where the credit transaction involves closed-end credit, the creditor must disclose the following:

> (2)(A) The "amount financed", using that term, which shall be the amount of credit of which the consumer has actual use. [and]
>
> . . .
>
> (3) The "finance charge", not itemized, using that term.

15 U.S.C. § 1638(a). The corresponding regulation provides:

> For each transaction, the creditor shall disclose the following information as applicable:
>
> . . .
>
> (c) Itemization of amount financed.
>
> (1) A separate written itemization of the amount financed, including:
>
> (i) The amount of any proceeds distributed directly to the consumer.
>
> (ii) The amount credited to the consumer's account with the creditor.
>
> (iii) Any amounts paid to other persons by the creditor on the consumer's be-

---

7. The record contains two copies of the Optional Credit Insurance Disclosure. *See* Exhibits D–1 and D–6. Exhibit D–1 is signed by the Debtor while D–6 is not.

half. The creditor shall identify those persons.

(iv) The prepaid finance charge.

(d) Finance charge. The finance charge, using that term, and a brief description such as "the dollar amount the credit will cost you."

12 C.F.R. § 226.18(c), (d). Whether the charge for credit insurance in this case should be part of the amount financed or the finance charge would depend on whether the Debtor was required to purchase it:

Charges or premiums for credit life, accident, or health insurance written in connection with any consumer credit transaction shall be included in the finance charges unless

(1) the coverage of the debtor by the insurance is not a factor in the approval by the creditor of the extension of credit, and this fact is clearly disclosed in writing to the person applying for or obtaining the extension of credit; and

(2) in order to obtain the insurance in connection with the extension of credit, the person to whom the credit is extended must give specific affirmative written indication of his desire to do so after written disclosure to him of the cost thereof.

15 U.S.C. § 1605(b). Likewise, Regulation Z provides:

(b) Example of finance charge. The finance charge includes the following types of charges, except for charges specifically excluded by paragraphs (c) through (e) of this section:

. . .

(7) Premiums or other charges for credit life, accident, health, or loss-of-income insurance, written in connection with a credit transaction.

. . .

(d) Insurance and debt cancellation coverage—

(1) Voluntary credit insurance premiums. Premiums for credit life, accident, health or loss-of-income insurance may be excluded from the finance charge if the following conditions are met:

(i) The insurance coverage is not required by the creditor, and this fact is disclosed in writing.

(ii) The premium for the initial term of insurance coverage is disclosed. If the term of insurance is less than the term of the transaction, the term of insurance also shall be disclosed. The premium may be disclosed on a unit-cost basis only in open-end credit transactions, closed-end credit transactions by mail or telephone under § 226.17(g), and certain closed-end credit transactions involving an insurance plan that limits the total amount of indebtedness subject to coverage.

(iii) The consumer signs or initials an affirmative written request for the insurance after receiving the disclosures specified in this paragraph. Any consumer in the transaction may sign or initial the request.

12 C.F.R. § 226.4(b)(7), (d).

Notwithstanding her signature on the form entitled "CE Optional Credit Insurance Disclosure," the Debtor insists that such charge was not voluntary. The Federal Reserve Board's Official Staff Commentary states that "whether the insurance is in fact required or optional is a factual question." 12 C.F.R. Pt. 226, Supp.I. "Inquiry into these circumstances is, of course, not foreclosed by the presence of a customer's signature on an insurance authorization." Federal Reserve Board Staff Letter of December 20, 1977, No. 1270, Consumer Credit Guide (CCH) ¶ 31,756. It has been held in this district that in order for a borrower to succeed in

a UDAP or TILA claim based on the theory that insurance is actually compulsory, the borrower is obliged to prove that (1) the lender affirmatively represented, by words or by conduct, that insurance was in fact required; and (2) as a result of the lender's actions, the borrower purchased insurance coverage that it is likely that she would not have otherwise purchased. *In re Milbourne*, 108 B.R. 522, 541 (Bankr.E.D.Pa.1989).

The Debtor contends that the purchase of credit insurance was a condition for this loan. Her mother and co-obligor, Ms. Sanchez, testified that Household did not allow them to read any of the documents that they signed and that Household told them that they were required to sign all of the documents presented to them:

Q. Did you read Exhibit 6 [CE Optional Credit Insurance Disclosure]?

A. No, no.

Q. Do you remember why you did not read it?

A. Because she only said to us you have to sign—this is for credit insurance [indiscernible] but she didn't say nothing about that—what kind of insurance, but she didn't say nothing about that, she only said you have to sign all of them.

Q. She said you have to sign them?

A. Yes.

T–14. Moreover, Ms. Sanchez' ability to read English is limited (*see* T–17) and there is no evidence that she had linguistic assistance available to her at settlement. For its part, Household offered no testimony of its own on this score and was unable to impeach that of the Debtor.

The Court is thus left with the co-obligor's testimony as the sole version of why she signed the credit insurance disclosure.

While this testimony is obviously self-serving, that does not mean that it is without credibility. It is buttressed by the report of the State of Washington's Department of Financial Institution regarding certain practices of Household Finance Corporation. In that report, that agency documents a number of similar cases where consumers were charged for credit insurance which they did not want. *See* Ex. D–13.[8] The Court therefore finds that the credit insurance was represented to the Debtor to be required for this loan and that the Debtor otherwise would not have purchased it. Household was required to disclose that cost as part of the finance charge. Its failure to do so constitutes a violation of TILA.

*The UDAP Claim*

■■■■■ The Debtor also contends that by falsely representing that credit insurance was required, Household violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UDAP), 73 P.S. § 201–1 *et seq.* Debtor's FF/CL, ¶ 42. In order to succeed in her claim under UDAP, the Debtor must meet three criteria. First, the Debtor must show that Household's business (that is, the providing of this type of secured financing) constitutes a "trade" or "commerce" within the act, 73 P.S. § 201–3. Second, she must show that the act grants her a private cause of action for injuries sustained from the loan. 73 P.S. § 201–9.2. Third, the debtor must demonstrate that the actions of which she complains are either unfair or deceptive and fall within one of the 21 specific acts enumerated by § 201–2, which are declared unlawful by § 201–3. *See In re Smith*, 866 F.2d 576, 581 (3d Cir.1989).

---

8. That report was offered into the record without objection under F.R.E. 803(8) ("Public Records and Reports"). The rules of evidence are made applicable by B.R. 9017.

The Court finds that all three elements have been established. The business of mortgages and mortgage financing has been held to be within the definition of "trade or commerce" found in UDAP. *Id.* As to the second, the Debtor cites two provisions of the statute which she maintains apply here:

(v) representing that goods or services . . . have characteristics . . . benefits or quantities that they do not have, . . . and

(xxi) engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 P.S. § 201–2(4)(v) and (xxi). The Debtor established the third element when she testified regarding the charge for credit insurance. She was told to sign papers and that was all. T–13, 14. And, again, Household's provided no evidence that it discussed the credit insurance charge with the Debtor. Based on that evidence, the Court finds that Debtor was deceived into believing that she had to purchase credit insurance. That would constitute a violation of either of the two UDAP provisions cited above.

*Damages*

■■■ Having found that Household committed violations on all three counts, the Court turns to the question of what relief is available to the Debtor. In her opening argument, Debtor made clear that, first and foremost, she desires to rescind this loan. T–3. She contends that she may void Household's secured interest and fulfill her tender requirement to Household by giving it an unsecured claim in her Chapter 13 plan. T–7. In this respect, the Debtor correctly points out that TILA gives courts the power to regulate the manner in which a consumer may exercise the right of rescission. On that score, the statute provides:

When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value . . . *The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.*

15 U.S.C. § 1635(b)(emphasis added). Likewise, the regulation provides:

(1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

(2) Within 20 calendar days after receipt of a *notice of rescission*, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

(3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph

(d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value ... (4) *the procedures outlined in paragraphs (d)(2) and (3) of this section may be modified by court order.*

12 C.F.R. § 226.23(d) (emphasis added).

It is the Debtor's request that the mortgage be voided and that she be allowed to fulfill her tender requirement as follows:

| Amount | Description | Record |
|---|---|---|
| $29,242.37 [9] | Loan Principal | D–2, D–4 |
| ($12,198.00) | Credit for Payments Made | Joint PreTrial Statement |
| ($ 2000.00) | TILA Statutory Damages | D–1, 2, 4, and 7 |
| $15,044.37 | Tender Requirement | |

Debtor's FF/CL, ¶¶ 63–65. The Debtor calculates the loan principal by deducting the charges for credit insurance, points, fees for title insurance, appraisals and recording. *Id.* The parties stipulated to the amount she has paid. Joint PreTrial Statement, ¶ 17. She lists a final deduction for $2000 for statutory damages provided for in TILA § 1640(a)(2)(A)(iii). The Debtor contends that considering the equities [10] she should be permitted to satisfy her tender requirement of $15,044.37 by treating Household as an unsecured creditor in her plan. Debtor's FF/CL, ¶¶ 67–68. Is this permitted?

The Third Circuit has not spoken on this subject. When confronted with a similar request, this Court refused to void a mort-

gage loan in the amount of $450,000 based on TILA violations. *See In re Apaydin,* 201 B.R. 716, 724 (Bankr.E.D.Pa.1996). The Court's rationale was that such a penalty was "utterly disproportionate and completely inequitable" considering the conduct at issue. *Id.* Since that decision, the District Court affirmed a bankruptcy court decision voiding an $18,000 mortgage debt because of TILA violations. *See Williams v. Gelt,* 237 B.R. 590, 599 (E.D.Pa.1999) (noting that the Court may weigh the equities and modify section 1635(b) when appropriate); *see also, In re Williams,* 291 B.R. 636, 662 (Bankr. E.D.Pa.2003) (refusing to condition rescission on tender of payment but instead requiring debtor to classify lender's claim as separate and unsecured); *and see also In re Bell,* 309 B.R. 139, 167 (Bankr. E.D.Pa.2004) (agreeing with *Williams* that while courts may modify certain procedures (as described in § 226.23(d)(4)), courts cannot modify the voiding of a security interest).

But elsewhere, there is a split among the circuits as to whether rescission must be conditioned upon tender. The Fourth, Sixth, Eighth, Ninth, Eleventh and District of Columbia Circuits hold that rescission may be conditioned upon tender. *See Williams v. Homestake Mortgage Co.,* 968 F.2d 1137, 1142 (11th Cir.1992); *Federal Deposit Insurance Corporation v. Hughes Development Company,* 938 F.2d 889, 890 (8th Cir.1991); *Brown v. National Permanent Savings and Loan Association,* 683 F.2d 444, 449 (D.C.Cir.1982); *Rudisell v. Fifth Third Bank,* 622 F.2d 243, 254 (6th

---

**9.** The principal breaks down by disbursements as follows: $3743.05 to Household; $12,701 to First Union (first mortgage); $10,991.11 to Household; $1807.21 in cash to Debtor. See Ex. D–4, p. 2. The Debtor reaches a slightly different total due ($29,-232.47) most likely due to transposition of numbers.

**10.** She contends that she was overcharged for interest and points and was coerced into paying insurance which wasn't required. FF/CL ¶ 69. For its part, Household has no response to any of these claims.

Cir.1980); *Powers v. Sims and Levin (In re Powers)*, 542 F.2d 1216, 1221–22 (4th Cir.1976); *LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir.1976). Only the Fifth Circuit requires rescission independent of tender; however, it did state that the lender was entitled to its money back. *Gerasta v. Hibernia National Bank*, 575 F.2d 580, 584–85 (5th Cir.1978) (ruling that while the creditor was entitled to a return of the loan proceeds, the debt was no longer secured by a mortgage on the obligors' property and the creditor's duties were in "no way conditional" upon the obligors' "tender of the loan proceeds.").

Regardless of the disagreement as to this fundamental issue, the cases confirm for the Court that the analysis is grounded in equity. With that in mind, the Court observes that the equities fall in favor of the Debtor. However, relegating the Household claim to unsecured status is unduly severe. As a Chapter 13 Debtor, Ms. Cruz may choose to offer a de minimis payment on that claim. This would effectively eviscerate her tender responsibility. Alternatively, the Debtor could propose payment in full, but default under the plan. In the event the case were dismissed it would again allow the Debtor to avoid the tender requirement. Finding both of the foregoing scenarios unsatisfactory, the Court will condition rescission upon tender, but will take further evidence at a supplemental hearing to determine the amount the Debtor is able to pay over the life of her plan, or over some different span of time. In all events, the Court's Order will provide that Household shall retain its security interest until the Debtor completes payment of the "tender" sum; in other words, the rescission shall be effective only upon completion of the tender.

*The Request for Monetary Damages under Act 6 and UDAP*

 The Court notes that the Debtor requests more than just rescission: she makes an additional demand for monetary damages. Debtor claims entitlement to upwards of $28,000 for both Act 6 and UDAP violations. Debtor's FF/CL, ¶ 71(iii), (iv). But it is well-established in this district that, as a general principle, the rescission of an agreement precludes an award of actual damages. *See In re Armstrong*, 288 B.R. 404, 419 (Bankr. E.D.Pa.2003); *In re Steinbrecher*, 110 B.R. 155, 159 (Bankr.E.D.Pa.1990); *In re Barber*, 266 B.R. 309, 320 n. 20 (Bankr.E.D.Pa. 2001); *In re Murray*, 239 B.R. 728, 735 (Bankr.E.D.Pa.1999). When the imposition of the rescission remedy removes any potential harm to the borrower, and no prior harm prior to rescission occurred, there can be no recovery for actual damages. *Steinbrecher*, 110 B.R. at 160.

While there is no doubt that an Act 6 violation occurred, Debtor will not have suffered damages from it so long as she is allowed to rescind. Act 6 provides for damages as follows:

> A person who has paid a rate of interest for the loan or use of money at a rate in excess of that provided for by this act or otherwise by law or has paid charges prohibited or in excess of those allowed by this act or otherwise by law may recover triple the amount of such excess interest or charges in a suit at law against the person *who has collected such excess interest or charges.*

41 P.S. § 502 (emphasis added). Because the statute provides only for actual damages, Debtor may not recover anything under this statute. All of her payments will be applied to the principal amount of the loan to reduce it for tender purposes. So while the interest rate that she was charged may have been illegal, she suffered no loss from it.

 Similarly, her request for actual damages for the UDAP violation must also

be rejected. UDAP provides for damages as follows:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action, to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper.

73 P.S. § 201–9.2. The charge for insurance may have been deceptive, but because she financed that cost, she will have not suffered actual damage from it if she rescinds. That is not the case however with the UDAP provision which awards statutory damages in the nominal amount of $100. That figure may be added to the offsets for calculating the tender requirement. Adding that to the tender deduction yields a total resulting claim of $15,134.87. How the Debtor will pay that amount will be the subject of another hearing.

*The Debtor's Claim for Attorney's Fees*

The Debtor seeks an award of reasonable attorney's fees and costs under all three statutes: 15 U.S.C. § 1640(a)(3), 41 P.S. § 503, and 73 P.S. § 201–9.2. Debtor's FF/CL ¶ 71v. Having found that the Debtor has proven all three causes of action—although some remedies are mutually exclusive of others—her counsel may press its request for fees and costs (presently unliquidated) at the subsequent evidentiary hearing regarding her tender requirement.

An appropriate order follows.

ORDER

AND NOW after trial in the above captioned adversary proceeding, and for the reasons set forth in the attached Opinion, it is hereby:

ORDERED that judgment is entered in favor of the Plaintiff and against the Debtor on all three causes of action in the complaint; and it is further

ORDERED that the Plaintiff may exercise her right to rescind her loan with Household; and it is

FURTHER ORDERED that a hearing shall be held on November, 30, 2004, at 10:00 a.m., United States Bankruptcy Court, 900 Market Street, 2nd Floor, Courtroom No. 4, Philadelphia, Pennsylvania, 19107, to consider the terms of the tender Plaintiff must make as a condition to rescission of the loan, and the amount of a reasonable attorney's fee award to Plaintiff's counsel.